United States Court of Appeals,

Fifth Circuit.

No. 92-4733.

Richard D. BARNETT, Plaintiff-Appellee,

v.

INTERNAL REVENUE SERVICE, Defendant-Appellant.

April 28, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before KING and EMILIO M. GARZA, Circuit Judges, and COBB, District Judge.[*]*

KING, Circuit Judge:

The Internal Revenue Seice appeals from the judgment of the district court denying its motion for judgment as a matter of law on the issue of Richard D. Barnett's liability under 26 U.S.C. § 6672(a). Because we conclude that the district court erred in denying the motion, we reverse and remand the action for further proceedings consistent with this opinion.

I.

The facts of this case relevant to our disposition of the primary legal issues are derived almost exclusively from the testimony offered by the plaintiff-appellee, Richard Barnett, and his witnesses at trial. In 1980, Barnett and Charles Anderson formed Anderson-Barnett Drilling Company, Inc. (the Company), to provide drilling services for oil and gas companies in southern Louisiana. Barnett and Anderson each retained twenty percent of the Company's stock, and the balance was sold to other investors recruited by Anderson. The Company's shareholders, including Barnett and Anderson, served as its directors. Barnett initially also served as vice-president of the Company. Anderson served as president and chief financial officer until March 1982, when Barnett succeeded him as president.

The Company maintained two offices, one in Lafayette, Louisiana, and the other in Lake Charles, Louisiana. Barnett ran the Company's field operations from the Lafayette office. His

[*]District Judge of the Eastern District of Texas, sitting by designation.

primary responsibility was directing the day-to-day operations of the Company's drilling rigs.  In this capacity, he handled operational problems, purchased supplies, and hired, fired, and supervised the field personnel.  He also did "sales" work—contacting potential customers, bidding on jobs, and negotiating drilling contracts.  Anderson, a certified public accountant, took care of the Company's bookkeeping and financial affairs at the Lake Charles office.  His responsibilities included maintaining the Company's financial books and records, filing tax returns, supervising the payroll, and paying creditors.

According to Anderson and Barnett's testimony, the two men also shared certain responsibilities.  Barnett would review bills sent to the Company by creditors and occasionally make recommendations to Anderson regarding whether certain creditors should be paid.[1]  Anderson testified, however, that he had the "final word" about the payment of creditors.  Barnett and Anderson also conferred about major business decisions affecting the finances of the Company, including the acquisition and financing of new equipment.  With respect to such business decisions, Anderson did not have the "final word";  rather, decisions were mutual.[2]  On at least one occasion, Barnett himself

Q.[1] ... [W]here were invoices of [the Company] processed?

    A. [Anderson:] Now, by invoices, what do you mean?

    Q. Well, you know, invoices to the company?

    A. To the company.  Normally they come into Lafayette and then were sent over to Lake Charles.

    Q. So, again, I ask you, prior to March 31 of '82, where were the invoices [of the Company] processed?

    A. Well, they were processed in both places.  They were approved in Lafayette and then were paid out of Lake Charles.

    Barnett himself testified that on occasion he would call Anderson and request that payment for particular creditors be expedited—"I'd call Mr. Anderson and say, "Consider trying to get these guys paid.' "

Q.[2] Did ya'll [Barnett and Anderson] have discussions regarding the direction of the corporation and the finances of the corporation?

    A. [Anderson:] Some, to a degree.

    Q. When you were deciding to make purchases or borrow money, did you discuss

successfully negotiated a loan with the First Bank of Lafayette for the purchase of equipment.

The Company maintained three checking accounts—two in Lake Charles and one in Lafayette. The Lake Charles accounts were used for payroll and for general operating expenses. The Lafayette account was used primarily to purchase supplies for the Company's rigs. The checkbook for the latter account was maintained by Barnett at the Lafayette office. Barnett was authorized to sign checks, wit hout Anderson's permission, and he did so on numerous occasions. Although the checkbooks for the other two accounts were kept at the Lake Charles office, it is undisputed that Barnett was authorized to sign checks drawn on both accounts and, again, could do so *without Anderson's permission.* On at least one occasion prior to taking over as president in March 1982, Barnett signed payroll checks when Anderson was out of town. After he became president, Barnett signed checks drawn on this account to pay employees as well as outside creditors.

Barnett testified that, despite his central role in the day-to-day business operations of the Company, his knowledge of its financial affairs was limited. For the most part, he simply allowed Anderson to run the financial side of the business. Moreover, because Barnett made only infrequent trips to the Lake Charles office, he had limited access to the Company's financial records until he took over as president in March 1982. When Barnett, in his capacity as vice president, did request "financial updat es" from Anderson, he was "assured" that "everything was going all right." It is

---

that with Mr. Barnett or did you do that on your own?

A. That was discussed.

Q. With any major financial decision of the corporation, did you decide that on your own or did you discuss that with Mr. Barnett?

A. So far as financing the equipment and so on?

Q. Financing new equipment.

A. That was discussed.... [Decisions] w[ere] mutual.

Q. So when he was—opposing counsel was asking you earlier about making financial decisions, you were mainly talking about you hav[ing] exclusive control over the bookkeeping function of the corporation; is that correct?

A. That's correct.

unmistakable from his testimony, however, that Barnett believed, by virtue of his position in the Company, that he had a right to know the financial condition of the business.[3] Barnett simply was so busy with the day-to-day business of the Company that he relied on Anderson's oral assurances: "I was more than convinced [that the financial affairs of the Company were extremely sound.] Charlie's assurances were very believable."

In 1981, the Company began experiencing financial difficulties. By early 1982, the Company's cash flow was drying up; creditors complained and checks were being returned for insufficient funds. In response to these problems, Barnett, still acting as vice president, met with creditors in an effort to restructure the financing of the Company's rigs. He also hired an accountant, Dorothy Level, to help him examine the Company's financial records. Anderson, however, refused to provide Barnett with the financial information he requested.

In March 1982, Barnett organized a directors meeting. At this meeting, Anderson resigned as president, and Barnett took his place. After a review of the Company's financial records revealed that Anderson had not been paying over taxes withheld from employees' paychecks to the United States, Barnett confronted Anderson, who denied that the taxes had not been paid. On April 12, 1982, however, Anderson confessed to Barnett and the other stockholders that the withheld taxes had indeed not been paid.

Significant deposits were made into the Company's Lafayette checking account after April 12, 1982, the date when Barnett first became aware that Anderson had not paid over the taxes. On April 13, the Company received a $375,000 payment from a customer, which was immediately offset by the depository bank to satisfy an outstanding loan. In the following weeks, however, other deposits, which were not offset, totalled $492,101.12. None of these funds were ever used to pay the Company's accrued withholding tax liability, which by the end of the first quarter of 1982 was $604,509.91. Instead, Barnett wrote checks for the payroll and to pay others, including a check for $72,590.68, made payable to himself, and a check for $20,000, made payable to cash. Several

---

[3]As he testified, "[a]s Mr. Anderson mentioned earlier, I asked him, on what I remember as a monthly basis to give me ... a financial update on the [the Company]."

months later, the Company filed for bankruptcy.

In accordance with 26 U.S.C. § 6672(a), the Internal Revenue Service (IRS) assessed Barnett and Anderson $604,509.91, which represented a one-hundred percent penalty for the Company's unpaid withholding taxes for the second, third, and fourth quarters of 1981 and the first quarter of 1982. Barnett paid $200 in partial satisfaction of the assessment, and the IRS applied credits of $2,382.24. When Barnett's claim for a refund was denied, he filed this refund suit in the district court. The IRS filed a counterclaim seeking recovery of the balance of the assessment, $600,623.67, plus statutory interest and additions. The IRS also joined Anderson as a third party defendant. On December 17, 1990, the district court granted summary judgment in favor of the IRS with respect to its claims against Anderson.

Barnett's case was tried before a jury in February 1992. At the close of the evidence, the IRS moved for judgment as a matter of law[4] on the issue of Barnett's § 6672(a) liability. The district court denied the motion and submitted to the jury instructions essentially tracking the elements of § 6672(a), asking whether Barnett was a "responsible person" in the Company who "willfully" failed to pay over withholding taxes.[5] The jury found that Barnett was not a "responsible person" for purposes of the statute and, therefore, never reached the issue of whether Barnett had willfully failed to pay the taxes.

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the IRS filed a renewed motion

---

[4]The December 1, 1991 amendment to Rule 50 of the Federal Rules of Civil Procedure abandons the familiar terms "directed verdict" and "judgment notwithstanding the verdict" in favor of a single term "judgment as a matter of law." *See* FED.R.CIV.P. 50.

[5]Section 6672(a) provides, in pertinent part:

> (a) *General Rule.* Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). The Code defines "person" to include "an officer or employee of a corporation, or a member or employee of a partnership who, as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

for judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion, observing that it agreed with the jury's verdict because, under the circumstances, it was "just not fair" to hold Barnett liable. The court reasoned that Anderson was "the responsible party" because "he hid everything from everybody else" and "he was totally in control." This appeal ensued.

## II.

In reviewing the disposition of the IRS's post-verdict motion for judgment as a matter of law, we apply the same standard applied by the district court. *Normand v. Research Institute of America, Inc.,* 927 F.2d 857, 859 (5th Cir.1991). We consider all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). If the facts and the inferences point so strongly and overwhelmingly in favor of one party that we believe that reasonable jurors could not arrive at a contrary verdict, then the motion should have been granted. *See id.* On the other hand, if there is substantial evidence opposed to the motion—that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might reach different conclusions—then the motion was properly denied. *Id.*

## III.

The Internal Revenue Code requires employers to withhold from employees' wages federal income taxes and social security contributions. 26 U.S.C. §§ 3102 and 3402. The employer holds these funds "in trust" for the United States. 26 U.S.C. § 7501(a). When a corporate employer fails to pay over the trust funds, § 6672(a) of the Code imposes a penalty equal to the entire amount of the unpaid taxes on "any person" required to collect, account for, or pay over the withheld taxes, who "willfully" fails to do so. Liability for the penalty is established if a person is a "responsible person"[6] who "willfully" failed to pay over the withheld taxes. *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991); *see also Raba v. United States,* 977 F.2d 941, 943 (5th Cir.1992); *Gustin v. United*

---

[6]In *Slodov v. United States,* 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 1785 n. 7, 56 L.Ed.2d 251 (1978), the Court noted that cases decided under § 6672 generally refer to the "person required to collect, truthfully account for, and pay over any tax imposed by this title" by the phrase "responsible person." Thus, a responsible person is any person who performs any one of the three functions specified in the statute. *Id.* at 250, 98 S.Ct. at 1787.

*States,* 876 F.2d 485, 491 (5th Cir.1989); *Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987); *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983). In § 6672(a) cases, once the Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness. *See Morgan v. United States,* 937 F.2d 281, 285 (5th Cir.1991); *Brounstein v. United States,* 979 F.2d 952, 954 (3d Cir.1992); *Oliver v. United States,* 921 F.2d 916, 919 (9th Cir.1990); *Ruth v. United States,* 823 F.2d 1091, 1093 (7th Cir.1987).[7]

The IRS contends that the undisputed evidence presented at trial establishes that Barnett is a "responsible person" who "willfully" failed to pay withholding taxes. In particular, the IRS asserts that: (i) Barnett possessed sufficient indicia of authority to be a responsible person for purposes of § 6672 and (ii) his failure to pay the overdue taxes was willful because he was responsible for making payments to creditors other than the United States after he learned that the withholding taxes were past due. Thus, the IRS argues, it was entitled to judgment as a matter of law on the issue of Barnett's liability under § 6672. After a careful review of the record, we agree.

A. Was Barnett a "Responsible Person"?

Although this court has treated the issue of whether one is a "responsible person" under § 6672 as essentially a question for the fact-finder,[8] other circuits have treated the issue as a mixed question of law and fact in view of certain recurring fact patterns that require a finding of responsibility "as a matter of law."[9] Even treating such a finding as a pure factual question, we cannot ignore the extensive caselaw that narrowly constrains a factfinder's province in § 6672 cases.[10] Thus,

---

[7]We note that, in the instant case, the Government at trial offered a certified copy of the assessment against Barnett.

[8]*See, e.g., Gustin v. United States,* 876 F.2d 485, 492 (5th Cir.1989) (affirming district court's finding that defendant was responsible person as "not clearly erroneous")

[9]*See, e.g., Hochstein v. United States,* 900 F.2d 543, 547 (2d Cir.1991) (*citing Thibodeau v. United States,* 828 F.2d 1499, 1503 (11th Cir.1987); *see also Johnson v. United States,* 565 F.Supp. 253, 256 (S.D.Tex.1983) (after applying legal principles established by Fifth Circuit § 6672 cases to facts of case, holding that "as a matter of law" party was responsible person).

[10]Whether treating the issue as a factual question or mixed question, countless courts have found responsibility as a matter of law. *See generally* Annotation, *Construction, Application, and Effect with Respect to Withholding, Social Security, and Unemployment Compensation Taxes, of Statutes Imposing Penalties for Tax Evasion or Default,* 22 ALR3d 8, § 4, at 49-77 & Supp., at

although "the facts ... are critical in ... any § 6672 cases," *Commonwealth National Bank of Dallas v. United States,* 665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of a finding of responsibility.

We first review those principles of law that narrowly constrain a factfinder's role in a § 6672 case. As we observed in *Gustin,* "[t]his circuit generally takes a broad view of who is a responsible person." 876 F.2d at 491; *see also Bowlen v. United States,* 956 F.2d 723, 728 (7th Cir.1992) (noting "broad net" of § 6672 regarding who is deemed a "responsible person"). Responsibility is simply a threshold question under § 6672: it is determined by looking to one's status within a corporation—that is, one's duty and authority to withhold and pay taxes. Unlike the willfulness element of the statute, responsibility does not require knowledge that one has that duty and authority. *See Mazo,* 591 F.2d at 1156; *see also Howard,* 711 F.2d at 734. The crucial inquiry is whether the person had the "effective power" to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. *See Raba,* 977 F.2d at 943; *Gustin,* 876 F.2d at 491-92; *Howard,* 711 F.2d at 734. Thus, a person may be a responsible person for purposes of the statute even though he does not know that withholding taxes have not

---

4-10 (collecting cases); Annotation, *When Are Persons Other Than Owners, Directors, Officers, and Employees Potentially Liable for Penalties Under IRC § 6672 (26 USCS § 6672) Concerning Failure to Collect and Pay Over Tax,* 84 ALR FED. 170, §§ 3-31 (collecting cases).

In a great number of cases, this court has held that a party was a "responsible person." In those cases, either we reversed a jury or trial court's verdict by holding that no reasonable factfinder could fail to find responsibility, or we affirmed a factfinder's verdict finding responsibility. *See, e.g., Raba v. United States,* 977 F.2d 941 (5th Cir.1992); *Morgan v. United States,* 937 F.2d 281 (5th Cir.1991); *Turnbull v. United States,* 929 F.2d 173 (5th Cir.1991); *McCray v. United States,* 910 F.2d 1289 (5th Cir.1990); *Gustin v. United States,* 876 F.2d 485 (5th Cir.1989); *Bowen v. United States,* 836 F.2d 965 (5th Cir.1988); *Wood v. United States,* 808 F.2d 411 (5th Cir.1987); *Howard v. United States,* 711 F.2d 729 (5th Cir.1983); *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743 (5th Cir.1982); *Brown v. United States,* 591 F.2d 1136 (5th Cir.1979); *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979); *Hornsby v. IRS,* 588 F.2d 952 (5th Cir.1979); *Neckles v. United States,* 579 F.2d 938 (5th Cir.1978); *Genins v. United States,* 489 F.2d 95 (5th Cir.1974); *Moore v. United States,* 465 F.2d 514 (5th Cir.1972); *Brown v. United States,* 464 F.2d 590 (5th Cir.1972); *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971); *Gefen v. United States,* 400 F.2d 476 (5th Cir.1968), *overruled on other grounds, United States v. McMahan,* 569 F.2d 889 (5th Cir.1978) (en banc); *Hewitt v. United States,* 377 F.2d 921 (5th Cir.1967); *cf. McCullough v. United States,* 442 F.2d 1011 (5th Cir.1971) (rev'g district court's grant of directed verdict in favor of taxpayer and ordering that issue be submitted to jury).

been paid, *see Mazo,* 591 F.2d at 1156, and he does not cease to be a responsible person merely by delegating the responsibility to others, *see Gustin,* 876 F.2d at 491. Moreover, the statute expressly applies to "any" responsible persons, not just to the person *most* responsible for the payment of the taxes. *Howard,* 711 F.2d at 737. There may be—indeed, there usually are—multiple responsible persons in any company. That another person in the company has been delegated the jobs of withholding and paying employees' taxes and generally paying creditors is beside point.[11] The crucial inquiry is whether a party such as Barnett, by virtue of his position in (or vis-a-vis) the company, could have had "substantial" input into such decisions, had he wished to exert his authority.

Like other circuits, *see, e.g., Bowlen v. United States,* 956 F.2d 723, 728 (7th Cir.1992); *O'Connor v. United States,* 956 F.2d 48, 51 (4th Cir.1992); *George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987), our cases have looked to a number of circumstantial indicia of responsible person status when an party lacks the precise responsibility of withholding or paying employees' taxes. As the court explained in *O'Connor,* the question of the existence, *vel non,* of a duty to comply with § 6672 "is considered in light of the person's authority over an enterprise's financial or general decisionmaking." *Id.* at 51. The factors we consider are indicia of such an authority. We ask whether such a person: (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. *See Raba,* 977 F.2d at 941; *Turnbull,* 929 F.2d at 178; *Gustin,* 876 F.2d at 492; *Howard,* 711 F.2d at 734. No single factor is dispositive. *See Raba,* 977 F.2d at 945. *See generally* Annotation, 84 ALR Fed. 170 at § 10-20 (collecting cases discussing the various factors).

In the case before us, the undisputed evidence establishes that Barnett's position in the

---

[11]*See Gustin,* 876 F.2d at 491 ("One does not cease to be a responsible person merely by delegating that responsibility to others...."); *Commonwealth,* 665 F.2d at 757 ("A responsible person is one who has a final or significant—even if not exclusive—word as to which bills or creditors should be paid."); *Neckles,* 579 F.2d at 940 ("Although the appellant may not have always had the "final' say about paying creditors, ... he did have significant control over disbursements."); *Liddon,* 448 F.2d at 512-13 (same); *see also Bowlen v. United States,* 956 F.2d 723 (7th Cir.1992); *Hochstein v. United States,* 900 F.2d 543, 547 (2d Cir.1990).

Company met every one of these criteria. Indeed, Anderson and Barnett's testimony establishes that during the three quarters of 1981 at issue here, Barnett: (i) owned twenty percent of the Company's stock; (ii) served as a director during each of the quarters for which taxes were not paid; (iii) served as vice president until March 27, 1982, when he took over as president; (iv) was responsible for the day-to-day operations of the Company, including hiring and firing employees; (v) purchased supplies with Company funds, reviewed vendor invoices before forwarding them to Anderson for payment, and made recommendations regarding which creditors to pay; and (vi) had check-signing authority on all three of the Company's checking accounts, and at least once signed pay-roll checks as vice president. Moreover, we observe that Barnett, in his capacity as vice president, obviously possessed enough authority over corporate affairs to independently investigate Anderson and ultimately force him out. *A fortiori,* Barnett was a responsible party during the first quarter of 1982, when he assumed the presidency of the Company and actually took direct control of the payroll duties. Under well-established precedent, then, Barnett would certainly qualify as a "responsible person" under § 6672 for all four quarters at issue.

Barnett argues, however, that this case is "entirely distinguishable" from "most cases" applying § 6672 and, thus, our traditional multi-factor analysis is inapposite in his case. Specifically, he contends that, despite the presence of the above noted indicia of authority, he had no effective control over the finances because the Company was run out of two offices. According to Barnett, "[f]rom a practical and logistical standpoint, [he] had no means of making sure the [tax] payments were being made, nor of finding out about their delinquency." We find this argument unpersuasive.

We first observe that cases *not* finding § 6672 responsibility are relatively few and far between. Our research has revealed only three such cases decided by this court—only one of which has any possible relevance to the instant case—as contrasted with almost two dozen cases involving analogous fact-patterns[12] in which we have held that a party *was* a "responsible person." *See Hill v.*

---

[12]*See supra* note 11.

*United States,* 368 F.2d 617 (5th Cir.1966).[13]  In *Hill,* we agreed with the district court that a bank that loaned money to a company that failed to pay withholding taxes was not a "responsible party" because the bank had no control over the corporation's finances.  368 F.2d at 622-24.  *But cf. Commonwealth National Bank,* 665 F.2d at 748-747 (holding bank and its officers liable because they exercised control over debtor company's finances).  We do not believe *Hill* supports Barnett's arguments because he—unlike the bank in *Hill*—possessed substantial authority, even if not always exercised, over his company's finances.

Nor do other courts' cases that have held that a party is not a "responsible person" support Barnett's argument.  First, none has involved a company official whose lack of responsibility related to his or her location in a satellite office.  Instead, such cases have typically involved attempts by the Government to hold responsible:  i) a spouse or child of a company official,[14] ii) a company official whose leadership or decision-making capacity was "nominal,"[15] or iii) some affiliated party, such as an outside accountant, who lacked control of the company's finances.[16]  *See generally* Annotation, 22 ALR3d at § 4[c], at 67-77 & Supp., at 11-12 (collecting cases).  Such cases, thus, have involved parties whose connection with company affairs were considerably more attenuated than a company

[13]In *McCullough v. United States,* 462 F.2d 588, 590 (5th Cir.1972), we held that a party was not a "responsible person" at the time that he failed to pay withheld taxes solely because it was undisputed that he was not an arguably responsible person at the time that the taxes were "collected."  Applying the plain language of the statute—which speaks of a "person required to collect, truthfully account for, *and* pay over" employees' taxes, *see* § 6672—we held that the party was not responsible under the statute because he assumed his arguably responsible-person status *after* the taxes had been collected.  As we noted in *supra* note 8, however, the Supreme Court has since interpreted § 6672 in the disjunctive.  In *Fitzgibbons v. United States,* 522 F.2d 1353, 1354 (5th Cir.1975) (per curiam), we reversed a finding of responsibility, but only to the extent that a corporate officer's responsibility under § 6672 terminated at the point that she left her position at the company.  Thus, the finding of no responsibility in both *McCullough* and *Hill* have no relevance whatsoever to the instant case.

[14]*See, e.g., United States v. Bloom,* 58-1 USTC ¶ 9502 (N.D.Cal.), *aff'd* 272 F.2d 215 (9th Cir.1959) (corporate president's wife);  *Philipson v. United States,* 55-1 USTC ¶ 9466 (E.D.N.Y.1955) (22-year old daughter of corporate officer).

[15]*See, e.g., French v. United States,* 180 F.Supp. 773 (E.D.N.Y.1960) (president of corporation, who title was purely nominal and who was not otherwise affiliated with company, was not compensated, had no authority to hire or fire employees, and had no connection with company's payroll).

[16]*See, e.g., Haffa v. United States,* 516 F.2d 931 (7th Cir.1975).

official such as Barnett.

We believe that to permit corporate officers who otherwise would have § 6672 responsibility to avoid that status simply because they operate out of an office of the company other than the one where tax and payroll matters are handled "would open the door to a host of evasive tactics." *See Raba,* 977 F.2d at 945. Moreover, such an exception to the broad definition of responsibility would create a slippery slope: what would distinguish this case from one where a company has offices spread out in a single city, or even one where a company has offices spread out in a single skyscraper? *See Turnbull,* 929 F.2d at 179 ("We find ... that the location of Foster's office does not determine whether he was a "responsible party.' "). Finally, we believe that the rationale for the broad net of § 6672 responsibility serves a valuable prophylactic purpose: it encourages officers, directors, and other high-level employees to stay abreast of the company's withholding and payment of employee's taxes. In the instant case, Barnett admitted that—despite his geographical separation from Anderson—he asked Anderson for monthly reports on the Company's finances and simply relied on Anderson's assurances. In this day and age of sophisticated communication facilities, even a remote satellite office does not have to be in the dark about what goes on in the company's home office. In sum, we believe that not only is it a bad business practice for a high-level company official such as Barnett to fail to monitor his company's finances, it also subjects him to being held a responsible party under § 6672.[17]

We conclude that the undisputed evidence presented at trial so overwhelmingly leads to the conclusion that Barnett was a responsible party that a reasonable juror could not arrive at a contrary verdict.[18] Thus, the district court erred by refusing to grant the Government's renewed motion for

---

[17]We note that at trial Barnett readily admitted that he *intended* to monitor Anderson's control of the financial side of the Company. Barnett claimed, however, that he simply was "too busy" to do so.

[18]In holding that a judgment as a matter of law was appropriate, we note the conclusion of the Eleventh Circuit, who similarly held, in a § 6672 case with quite similar facts, that the party was a responsible person "as a matter of law":

> The district court found George to be a responsible person because he admitted to be being a vice-president, director, and fifty percent shareholder of the corporation. Also, George testified that he was a signatory of the corporate bank

judgment as a matter of law.

B. Did Barnett act "willfully"?

The sweeping net of § 6672 responsibility is not intended to unfairly impose actual liability on a person who, in failing to withhold and pay over employees' taxes to the IRS, did not exercise any actual knowing responsibility. As noted, *supra,* § 6672(a) will impose liability on a responsible person only if that person "willfully" failed to collect, account for, or pay over withheld taxes. Therefore, the willfulness inquiry is the sifter in most § 6672 cases.

Although Barnett's jury did not reach this issue, the IRS argues on appeal that the undisputed evidence presented at trial also establishes Barnett's willful failure to pay withheld taxes. Specifically, the IRS contends that it is entitled to judgment as a matter of law because Barnett made and allowed payments to creditors other than the United States after he had knowledge that withholding taxes for the four quarters at issue on this appeal had not been paid.

Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent. *Mazo,* 591 F.2d at 1154; *see also Gustin,* 876 F.2d at 492. Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States. *Gustin,* 876 F.2d at 492. "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." *Howard,* 711 F.2d at 736.

Barnett testified that he first learned on April 12, 1982, that Anderson had not paid the withholding taxes. Barnett further testified that, after April 12, he signed checks for payroll and to pay other creditors, including himself. Once he became aware of the tax liability, Barnett had a duty to ensure that the taxes were paid before any payments were made to other creditors. *Mazo,* 591 F.2d at 1154. Such undisputed evidence that he failed to do so would ordinarily establish willfulness

account and had blank checks in his possession. Furthermore, George had the ability to hire and fire employees. Under these facts, we conclude as a matter of law that appellant was a responsible person within the meaning of the statute.

*George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987).

as a matter of law. *Howard,* 711 F.2d at 735; *Mazo,* 591 F.2d at 1157.

Barnett argues, however, that he did not willfully fail to pay the past due taxes because any funds that were available to pay the accrued withholding taxes were "later-acquired funds." He contends that because a change in corporate control occurred when he replaced Anderson as president, he had no duty to pay the taxes from such purportedly later-acquired funds. In making this argument, Barnett relies on the Supreme Court's decision in *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In *Slodov,* the Court held that the Government could not hold a person accountable under § 6672 if the only company funds available to pay withholding taxes over to the Government were funds acquired after the party assumed responsible person status within the corporation. *Id.* at 254, 98 S.Ct. at 1788. In light of our determination that Barnett was at all times a responsible person during the four quarters at issue on this appeal, we need not address this argument. Rather, as we have previously held, "[i]n the case of individuals who are responsible persons *both before and after withholding tax liability accrues* ... there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; *failure to do so when there is knowledge of the liability* ... constitutes willfulness." *Mazo,* 591 F.2d at 1157 (emphasis added); *see also Turnbull,* 929 F.2d at 179-80; *Wood,* 808 F.2d at 416; *Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979). Barnett admitted at trial that he knew, beginning April 12, 1982, that withholding taxes were due *for the previous four quarters.*

Barnett further argues that there were no "unencumbered" funds with which to pay the past due taxes. *See Mazo,* 591 F.2d at 1154 ("[R]esponsible persons are subject to a duty to apply any available unencumbered funds to reduction of accrued withholding tax liability...."). Specifically, he asserts that all of the Company's accounts receivable deposited into the Company's bank accounts after April 12, 1982, were pledged as collateral for loans. The IRS challenges this assertion, as well as a related assertion made by Barnett that he was not required to pay over available funds which constituted "loan proceeds"—which, presumably, Barnett believed were also "encumbered" in some sense.

We initially note the operative definition of "encumbered," which we adopt from the Eighth

Circuit's § 6672 jurisprudence. In *Honey v. United States,* 963 F.2d 1083 (8th Cir.1992), the court stated:

> [w]here the taxpayer's discretion in the use of funds is subject to restrictions imposed by a creditor holding a security interest in the funds which is superior to any interest claimed by the IRS, the funds are regarded as encumbered if those restrictions preclude a taxpayer from using the funds to pay the trust fund taxes.

*Id.* at 1090 (citation omitted).

We next observe that the burden to prove that the loan proceeds and accounts receivable deposited into the Company's bank accounts after April 12, 1982, were "encumbered" falls on Barnett, as that issue is part of the larger willfulness inquiry. *See Raba,* 977 F.2d at 946 n. 6 (*citing Mazo,* 591 F.2d at 1155).

We agree with the IRS that, based on the record before us, the accounts receivable deposited into the Company's bank accounts between April 12, 1982, and the date when the Company filed for bankruptcy were, as a matter of law, *un*encumbered for purposes of § 6672. This is because, under the above definition of "encumbered," Barnett entirely failed to prove that he lacked the discretion to use the accounts receivable and loan proceeds deposited after April 12, 1982, to pay the accrued withholding taxes. Rather, he simply introduced testimony that the accounts receivable were "pledged" as collateral to Metro Savings and Loan. As the Government correctly states in its reply brief, "there is no evidence in the record establishing that Metro['s] interest in the accounts receivable prevented taxpayer from using those funds for the payment of the corporation's tax liability. Nor is there any evidence showing that any of the proceeds of the accounts receivable were actually paid out to Metro...." The same is true of the loan proceeds deposited into the Company's bank accounts after April 12, 1982. Thus, we agree with the Government that, as a matter of law, Barnett "willfully" failed to pay the $492,101.12 in available, unencumbered funds deposited into Company bank accounts after Barnett became aware that the accrued withholding taxes were due.

We disagree, however, with the Government's argument that the $425,000 in uncollected accounts receivable due from one of the Company's customers may be considered as a liquid asset that could have been used in part by Barnett to pay the balance of the accrued taxes, assuming that Barnett had paid over the $492,101.12. That amount was simply not yet available for Barnett to use

to pay the accrued taxes. Finally, although at trial the Government contended Barnett was also liable regarding an additional $375,000 deposited into one of the Company's accounts on April 14, 1982—which was immediately offset by the depository bank for payment of an overdue Company loan—on appeal the Government has abandoned that particular claim.[19]

## IV.

In sum, we conclude that the undisputed evidence presented at trial establishes, as a matter of law, that Barnett was a responsible person who willfully failed to pay over withholding taxes. We REVERSE the judgment of the district court denying the IRS's motion for judgment as a matter of law and RENDER judgment for the IRS. Thus, Barnett is liable for the amount of $492,101.12, minus the $2,582.24 in partial payment and credits, plus statutory interest and additions. We REMAND to the district court for the entry of judgment following the computation of statutory interest and additions.

. . . . .

---

[19]We also note that, on appeal, the Government makes no claim to any unencumbered assets that the Company may have possessed *as of* April 12, 1982. Rather, the Government only focuses on assets received *after* that date. Furthermore, neither at trial nor on appeal has the Government argued that Barnett could be held liable as a willful and responsible party during the last three quarters of 1981 based on the theory that Barnett was reckless in failing to check to see that withholding taxes were being paid to the Government. *See Mazo,* 591 F.2d at 1154 ("The willfulness requirement is satisfied if the responsible party acts with a reckless disregard of a[n] ... obvious risk that trust funds may not be remitted to the Government....").