**In re Oscar Antonio CHABRAND, Debtor.**

No. 03–70387–M–13.

United States Bankruptcy Court, S.D. Texas, McAllen Division.

Nov. 4, 2003.

| Quarter ending March 31, 1998 | $ 20,295.40 |
|---|---|
| Quarter ending June 31, 1998 | 27,236.50 |
| Quarter ending September 30, 1998 | 15,382.70 |
| Quarter ending December 31, 1998 | 21,215.18 |
| Quarter ending March 31, 1999 | 21,215.18 |
| Quarter ending June 30, 1999 | 17,853.94 |
| Quarter ending September 30, 1998 | 6,290.85 |
| Total | $129,489.75 |

See Government Exhibits 8 through 14.

Michael T. Shelby, United States Attorney, David B. Coffin, Attorney, Tax Division, Department of Justice, Dallas, TX, for United States.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD S. SCHMIDT, Bankruptcy Judge.

On this day came on for consideration the § 505 Motion, filed by the Debtor Oscar Chabrand ("Chabrand"). The Court having heard the evidence and arguments of counsel, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Debtor Oscar Antonio Chabrand ("Chabrand") commenced this action by filing a Section 505 Motion on April 17, 2003, challenging the IRS assessment against him for Section 6672 Trust Fund Recovery Penalties for all four quarters of 1998 and the first three quarters of 1999. Debtor asserts he is not liable for the 6672 penalties.

2. As reflected on the Certificate of Assessments and Payments (IRS Form 4340), the IRS timely assessed the trust fund taxes pursuant to 26 U.S.C. § 6672 against Debtor for unpaid payroll taxes of Trailnor, Inc., for the following periods and amounts:

3. During all relevant time periods, Chabrand was the sole shareholder of Trailnor, Inc., and its president. Chabrand was the sole member of Trailnor's Board of Directors. Another individual, David Kramer, was Trailnor's Vice–President. Trailnor's physical address was 1500 West Polk, Pharr, Texas 78577.

4. Chabrand resides in Monterrey, Mexico. He attended college in Mexico City, although he did not receive a degree. He studied business, attempting to get a business administration degree, and he took courses in accounting and business administration.

5. Chabrand left college in 1979 and operated a steel manufacturing company in Mexico City. This company had two full-time employees for which Chabrand's company withheld and paid over social security taxes to the Mexican government. Chabrand had additional experience operating other businesses which were required to withhold social security taxes for employees under Mexican law. In the early nineties, Chabrand owned and operated a small factory which manufactured steel bars, and which employed six people, for whom social security taxes were required to be withheld and paid over to the Mexican government. Later, Chabrand was the general manager of a family steel business which employed twenty-five to thirty people, for whom social security taxes were withheld and paid over to the Mexican government.

6. Trailnor incorporated in mid–1995, and was in the business of designing and

manufacturing custom trailers. Trailnor purchased the assets of an existing trailer manufacturer prior to beginning its business.

7. Chabrand was the sole financier of Trailnor's start up and operations, and he negotiated and guaranteed a loan with First Valley Bank for $380,000, which was secured with Chabrand's Certificates of Deposit of $400,000 on deposit with First Valley Bank. Chabrand later negotiated and guaranteed a working capital loan on behalf of Trailnor of $17,000, also with First Valley Bank. See Government Exhibit 29.

8. After Trailnor began its business, Chabrand continued to reside in Monterrey, Mexico. On October 4, 1996, however, Chabrand purchased a home, located at 2315 Silverado S. Drive, Mission, Texas 78572. Chabrand traveled from Monterrey to Trailnor's business once every two to three weeks and discussed the operations with David Kramer, to whom Chabrand had delegated the duty of overseeing the day to day operations. Chabrand stayed approximately a full day on those trips and discussed the business with Kramer. To ensure that Kramer was not diverting monies from the company, Chabrand reviewed the bank statements and canceled checks during his visits. Chabrand had signature authority over Trailnor's general Bank account and signed checks for the company.

9. Although Kramer oversaw the day to day operations of the company, Chabrand knew the company had to fulfill certain tax obligations. He knew that the company had an obligation to file tax returns.

10. As president, sole shareholder and sole director, Chabrand had the authority to perform the day to day functions, such as hiring, firing and managing employees, although he did not regularly exercise those functions.

11. On or around April 26, 1996, Trailnor purchased two pieces of property in Lot 1, Dailey Oil Tools, Inc., Subdivision, in Hidalgo County, Texas. Chabrand participated in the purchase as president of the corporation.

12. About the same time Trailnor began business, Chabrand opened a Mexican trailer manufacturing company called "Trailnor de Mexico" in Monterrey. That company was formed and operated to "complement" the Trailnor business in the United States.

13. Trailnor operated at a loss from the beginning. Its Form 1120, U.S. Corporation Income Tax Returns, showed *losses* of $44,793, $409,684, and $44,018 for 1995, 1996 and 1997, respectively. Despite continuing business until mid–1999, Trailnor failed to file income tax returns for 1998 and 1999.

14. When the company began experiencing financial difficulties, everyone knew, even the welders because suppliers were not being paid and the company struggled to pay its employees.

15. Trailnor also had an obligation to file Form 720, United States Excise Tax Returns and pay excise taxes for their purchase of certain manufacturing supplies and products. Trailnor failed to pay these excise taxes for several periods. The IRS sent notices to Trailnor indicating that excise taxes were due for the above periods on at least two occasions, on March 11, 1996 and September 7, 1998.

16. Trailnor failed to file timely payroll tax returns for all four quarters of 1998. However, the company made deposits of $4,741.91 and $3,710.70 around February 3, 1998, for the first quarter of 1998. The company also made a federal tax deposit of $4,984.68 around April 6, 1998 for the sec-

ond quarter of 1998. Before 1998, Trailnor satisfied all of its payroll tax obligations.

17. On or around May 11, 1999, Trailnor sold to WJB Wells, Inc., real property located in Hidalgo County, Texas. WJB Wells, Inc., as grantee on the warranty deed, borrowed $350,000 cash that was paid to Trailnor, per the terms of the Warranty Deed with Vendor's Lien. The documents were executed by Oscar Chabrand, as president of Trailnor. None of these monied were paid over to the IRS for payroll taxes.

18. On June 22, 1999, Trailnor executed a Deed of Trust as Grantor on property located in Hidalgo County, Texas, consisting of approximately 4.766 acres for a Note in favor of Axletree, Inc., a Missouri Corporation, in the amount of $340,910.73. The purpose of the Note was to renew and extend the balance on a prior note of $109,856.53, dated November 17, 1998, executed by Trailnor and payable to Axletree. Additionally, the Note also represented $234,404.16 in cash that Axletree advanced to Trailnor on that date of June 22, 1999. The document was signed by Oscar Chabrand as President of Trailnor. None of these monies were paid over to the IRS for payroll taxes.

19. Also on June 22, 1999, Trailnor and Axletree, Inc. executed an Agreement for Partial Release of Liens that enabled Trailnor to subdivide and sell the 4.766 acres referred to above. This agreement was also signed by Chabrand as president of Trailnor. If these properties were ever subdivided and sold, the proceeds were never paid over to the IRS for payroll taxes.

20. On September 3, 1999, the IRS received Forms 941 from Trailnor, for the following periods, and showing amounts due, all signed by Chabrand:

| | |
|---|---:|
| Quarter ending March 31, 1998 | $21,364.91 |
| Quarter ending June 30, 1998 | 40,706.36 |
| Quarter ending September 30, 1998 | 21,988.27 |
| Quarter ending December 31, 1998 | 30,629.33 |
| Quarter ending March 31, 1999 | 30,629.33 |

See Government Exhibits 1–5, and 32.

21. On November 1, 1999, the IRS received Form 941 from Trailnor for the quarter ending June 30, 1999, showing the amount due of $25,915.83, which was signed by Chabrand. See Government Exhibit 6 and 33.

22. On November 26, 1999, the IRS received Form 941 from Trailnor for the quarter ending September 30, 1999, showing the amount due of $9,359.11, and signed by Chabrand. See Government Exhibits 7 and 34.

23. Trailnor went out of business sometime in late 1999 and did not pay any of the amounts due as shown on the above returns.

24. David Kramer passed away of cancer in October of 2000.

25. On November 20, 2000, the IRS mailed Form 3164A letter to Chabrand at 2315 Silverado S., Mission, Texas 78572, advising him that the IRS was attempting to collect the unpaid tax of Trailnor. See Government Exhibit 30. Chabrand claims he never received this document.

26. On December 6, 2000, Chabrand called an IRS Revenue Officer and advised that he was in Monterrey, Mexico, and would be hiring attorney David Davila to represent him. Chabrand further advised the he would be forwarding a Form 2848 (Power of Attorney and Declaration of Representative) to the IRS within the next week.

27. On August 27, 2001, the IRS mailed to Chabrand by certified mail a Form 1153 letter to the address of 2315 Silverado, Mission, TX 78572. The Form 1153 letter advised Chabrand that the IRS planned to assess the Trust Fund Recover Penalty

against him for Trailnor's unpaid payroll taxes. An identical copy of mailed to David Davila. See Government Exhibits 26 and 27. Chabrand's letter came back from the post office marked "unclaimed," but the Post Office's notations indicated that it served notice on August 28, 2001, September 5, 2001, and September 12, 2001.

28. Chabrand's correct address is 2315 Silverado S., Mission, TX 78572. No street named Silverado N. exists in Mission, but other streets containing "Silverado"in their name exist in the area.

29. On September 24, 2001, David Davila returned a call to the IRS Revenue Officer and discussed with him the pending Trust Fund Recovery Penalty ("TFRP") assessment against Chabrand.

30. Chabrand did not appeal to the IRS regarding the TFRP because he was following the advice of his hired professional, David Davila.

31. On October 29, 2001, the IRS assessed Chabrand for the subject TFRP.

32. On November 14, 2001, a Notice of Federal Tax Lien was filed against Chabrand in Hidalgo County for $129,489.75.

33. On November 15, 2001, an IRS Revenue Officer returned a call to David Davila, Chabrand's representative, and they discussed the TFRP assessed against Chabrand.

34. On December 3, 2001, David Davila faxed to IRS a Form 2848, Power of Attorney and Declaration of Representative, indicating that Davila was Chabrand's representative for Trust Fund Penalty for the Tax Form Number 940 and 941 for 1997 through 1999.

35. On November 29, 2002, the IRS sent by certified mail to Chabrand at 2315 Silverado, Mission, Texas, 78572, a Final Notice of Intent to Levy, Form 1058, which was returned by the post office marked "unclaimed", with a notation that notice was given on November 30, 2002, December 11, 2002, and December 16, 2002. See Government Exhibit 28.

36. On April 17, 2003, Chabrand filed for Chapter 13 bankruptcy protection, and filed his Section 505 Motion to determine tax liability contesting his liability under 26 U.S.C. § 6672.

37. On May 30, 2003, the IRS filed its proof of claim, listing the TFRP as a claim against Chabrand's Chapter 13 estate.

38. Chabrand was a responsible person of Trailnor, Inc., under Section 6672 who willfully failed to collect and pay over payroll taxes to the IRS.

39. Any finding of fact which is more properly deemed to be a conclusion of law is to be considered a conclusion of law.

### *PROPOSED CONCLUSIONS OF LAW*

1. A Certificate of Assessments and Payment (IRS Form 4340) is sufficient evidence to establish that the tax assessments were properly made and are presumptively correct, absent evidence to the contrary. *Stallard v. U.S.*, 12 F.3d 489, 493 (5th Cir.1994); *U.S. v. McCallum*, 970 F.2d 66, 71 (5th Cir.1992).

2. 26 U.S.C. §§ 3102(a) and 3402(a) require employers to withhold the employees' share of federal social security taxes and income taxes from the wages of their employees. The money withheld from each employee's wages is then held by the employer in trust ("trust fund monies") for the benefit of the United States as provided for by 26 U.S.C. § 7501(a). *Slodov v. U.S.*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

3. Employers must pay over the withheld taxes to the United States. *Wood v. U.S.*, 808 F.2d 411, 414 (5th Cir.1987). These funds do not belong to the employer

and are not to be used by the business. If an employer withholds these taxes but fails to pay them over to the United States, the employee is nevertheless given full credit for having paid the taxes, and the Government may not require any additional payment from the employee. Thus, unless the Government can collect these taxes from the employer or the persons responsible for the collection and nonpayment of the taxes, the revenues are forever lost to the Government. *Slodov*, 436 U.S. at 243–45, 98 S.Ct. 1778; *Mazo v. U.S.*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied, Lattimore v. U.S.*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

4. To protect against such revenue losses, 26 U.S.C. § 6672 ("Section 6672") was enacted by Congress. Section 6672 reads, in pertinent part:

> (a) GENERAL RULE—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

5. 26 U.S.C. § 6671(b) defines a person as follows:

> The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

6. The Supreme Court in *Slodov*, when interpreting § 6672 held that:

> We conclude therefore that the phrase "[a]ny person required to collect, truth-fully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question.

*Slodov*, 436 U.S. at 250, 98 S.Ct. 1778.

### NOTICE UNDER 6672(b)

7. Section 6672(b) of the Internal Revenue Code provides generally that no Trust Fund Recovery Penalty shall be imposed unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty. Such notice must precede any notice and demand of the penalty, generally by sixty days. Section 6212(b) provides generally that such notice shall be mailed to the taxpayer's last known address, unless the Secretary has notice of the existence of a power of attorney for the taxpayer.

8. Where a mailing to the correct address occurs but the taxpayer does not accept certified mail, notice is nevertheless deemed valid under Section 6212(b). *Zikria v. Williams*, 535 F.Supp. 481, 485 (W.D.Pa.1982); *Carlyle v. Commissioner*, 1993 WL 120348, 65 T.C.M. 2457 (U.S.Tax Ct.1993).

9. In cases where IRS mailed notices under Section 6212(b) are returned "unclaimed" versus "undelivered," there is a substantial practical difference in that for the latter, the IRS may be prompted to recheck its files to determine whether notice was sent to the right address. *Id.*

10. A notice under Section 6212 mailed to a taxpayer's last known address need not be received to be effective. *Kea-*

*do v. United States,* 853 F.2d 1209, 1211–1212 (5th Cir.1988).

■ 11. Notices sent to taxpayers with minor errors in the address do not invalidate the notice under Section 6212(b) when returned unclaimed. *Carlyle v. Commissioner, supra. citing Keado, supra.*

■ 12. Chabrand asserts that he did not receive notice pursuant to Section 6672(b). Notice to Chabrand was proper under Section 6672(b) based on the authorities cited above. The IRS Revenue Officer correctly mailed the notice to Chabrand's last known address as required under Section 6212(b). Although notice in the form of Form 1153 was mailed to Chabrand's address of "2315 Silverado" rather than "2315 Silverado S.," such a minor error does not affect the validity of notice under Section 6212(b). The letter was returned "unclaimed" rather than "undeliverable." Chabrand testified, however, that he never even received a letter addressed to "2315 Silverado S.," supposedly his "correct" address. The evidence supports the fact that Chabrand's failure to receive his mail was not the IRS's fault, and Chabrand's refusal to accept the notice under Section 6672(b) does not deem it invalid. *Carlyle v. Commissioner, supra.*

■ 13. Additionally, Chabrand had notice of the Form 1153 through his hired representative, David Davila. On the same day the IRS Revenue Officer mailed the Form 1153 to Chabrand, he mailed a copy of the letter to Davila, pursuant to prior instruction from Chabrand that he would be hiring Davila as his representative. Chabrand has not pled or denied that he received notice from his representative, David Davila, but alleges that he did not receive actual notice. There can be no dispute that Davila was Chabrand's representative, because Davila spoke to the IRS on behalf of Chabrand regarding the pending assessment in the following month. Chabrand acknowledges hiring Davila and admits that he did not appeal the IRS's proposed Trust Fund assessment because he was following the advice of Davila, his hired professional. Chabrand has the burden to overcome the presumption established by the IRS's Form 4340, Certificate of Assessments and Payments, that the assessments were procedurally correct and he failed to meet that burden. *Stallard v. U.S.,* 12 F.3d 489, 493 (5th Cir.1994); *United States v. McCallum,* 970 F.2d 66, 71 (5th Cir.1992).

## RESPONSIBLE PERSONS

■ 14. A responsible person is a person who performs any of the three functions specified in the Section 6672. *Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1453 n. 6 (5th Cir.1993).

15. Though Section 6672 is phrased in terms of a "penalty," the penalty may be more accurately described as a mechanism for shifting part of the tax liability of a defaulting corporation to those responsible for nonpayment. *Newsome v. U.S.,* 431 F.2d 742, 745 (5th Cir.1970).

■ 16. There are two elements to liability under Section 6672. First, a person upon whom liability is to be imposed must be a person required to collect, truthfully account for, or pay over any tax, commonly referred to as a "responsible person". Second, the responsible person willfully failed to collect, truthfully account for, or pay over such taxes. *Wood,* 808 F.2d at 414; *Howard v. U.S.,* 711 F.2d 729, 733 (5th Cir.1983).

■ 17. Responsibility for purposes of Section 6672 is a matter of status, duty, power and authority, whether exercised or not. *Wood,* 808 F.2d at 415; *Howard,* 711 F.2d at 734.

18. The Fifth Circuit generally takes a broad view of who is a responsible person. *Barnett,* 988 F.2d at 1454; *Gustin v. U.S. I.R.S.,* 876 F.2d 485, 491 (5th Cir.1989); *Wood,* 808 F.2d at 415.

19. The crucial inquiry is whether the individual had the effective power to pay the taxes. *Barnett,* 988 F.2d at 1454; *Howard,* 711 F.2d at 734.

20. Responsible person status is not limited to people who perform the mechanical jobs of collection and payment of corporate funds. The Fifth Circuit, like other circuits, looks at a number of circumstantial indicia of responsible person status when a party lacks the precise responsibility of withholding or paying employees' taxes. In *Barnett,* the Court noted the fact that this Circuit takes a broad view of who is a responsible person and stated:

> ... we cannot ignore the extensive case law that narrowly constrains a fact finder's province in § 6672 cases. [Footnote omitted.] Thus, although "the facts ... are critical in ... any § 6672 cases," *Commonwealth National Bank of Dallas v. United States,* 665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of responsibility.

*Barnett,* 988 F.2d at 1454.

21. Recognized indicia of responsible person status include the following:

(a) the holding of corporate office, *Brown v. U.S.,* 591 F.2d 1136, 1138, 1139 (5th Cir.1979);

(b) the ownership of stock, *Brown,* 591 F.2d at 1138;

(c) the authority to sign corporate checks, either alone or jointly with another officer, *Brown v. U.S.,* 464 F.2d 590, 591 (5th Cir.1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973);

(d) the authority to obtain financing or loans for the corporation, *Liddon v. U.S.,* 448 F.2d 509, 511 (5th Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972);

(e) the authority to execute corporate loans for the corporation, *Moore v. U.S.,* 465 F.2d 514, 517 (5th Cir. 1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973); *Liddon,* 448 F.2d at 511;

(f) personally guaranteeing the debts of the corporation, *Liddon,* 448 F.2d at 511; *Brown,* 591 F.2d at 1139.

(g) the authority to negotiate contracts for the corporation, *Gefen v. U.S.,* 400 F.2d 476 (5th Cir.1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123 (1969), *reh. denied,* 394 U.S. 967, 89 S.Ct. 1302, 22 L.Ed.2d 569 (1969);

(h) the authority to hire and fire employees, *Howard,* 711 F.2d at 731;

(i) the holding of a position as a member of the board of directors, *Hewitt v. U.S.,* 377 F.2d 921, 923 (5th Cir. 1967); *Liddon,* 448 F.2d at 511;

(j) the effective power to decide what creditors are to be paid, *Howard,* 711 F.2d at 734; and

(k) the authority to purchase corporate assets, *Liddon,* 448 F.2d at 511.

Neither any particular indicia nor any particular combination of indicia is required for a finding of responsibility. As the Fifth Circuit stated, it "cannot allow [an individual] to disqualify himself from responsible person status simply because he does not fit into every category ever listed." *Raba v. U.S.,* 977 F.2d 941, 944 (5th Cir.1992).

23. A company cannot make the Internal Revenue Service an unwilling joint venturer by not paying currently owed

taxes in the hope things will improve in the future. *Mazo v. U.S.*, 591 F.2d at 1154.

24. An individual need not run the day-to-day corporate operations to be a responsible person. *Mazo, supra.; Lattimore v. U.S.*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

25. Responsibility does not require knowledge that one has the duty or authority to pay the taxes. *Barnett, supra.* at 1454.

26. A person may be a responsible person even though he does not know that the withholding taxes have not been paid. *Barnett, supra.* at 1454.

27. Chabrand meets the recognized indicia of responsible person status because he: (i) was the sole shareholder in Trailnor; (ii) was president and the sole member of the board of directors; (iii) had the authority to sign, and in fact signed, corporate checks; (iv) obtained financing and loans for Trailnor, and personally guaranteed those obligations; (v) negotiated, purchased and sold assets on behalf of the corporation; (vi) had the corporate authority to hire and fire employees, negotiate contracts, and all other corporate duties associated with being the senior executive in the company. Accordingly, the Court finds that Chabrand was a responsible person of Trailnor under Section 6672.

### WILLFULNESS

28. Once an assessment of penalty taxes is made and it is established that the taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. *Mazo, supra.* at 1155.

29. Liability attaches to a "responsible person" under Section 6672 upon his "willful" failure to collect or account for and pay over the employment taxes. The Fifth Circuit reaffirmed its basic knowledge standard of "willfulness" originally set forth in *Mazo:*

Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent. *Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States.* "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." (Emphasis added, citations omitted.)

*Barnett*, 988 F.2d at 1457.

30. The willfulness requirement is also satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government. *Mazo, supra.* at 1154. This includes a responsible person's failure to investigate or correct mismanagement after being notified that withholding taxes have not been duly remitted. *Id.* at 1154–1155.

31. A taxpayer cannot satisfy the burden of proof as to willfulness merely by showing that he delegated his responsibilities to someone else. A fiduciary cannot absolve himself merely by disregarding his duty and leaving it to someone else to discharge. *Hornsby v. Internal Revenue Service*, 588 F.2d 952, 953 (5th Cir.1979).

32. A taxpayer's delegation of responsibility does not constitute reasonable cause such that willfulness may be negated. *See Mazo, supra.* at 1155.

33. A responsible person with knowledge of a corporation's financial problems may not immunize himself of the consequences of his actions by wearing

■■■■■■■ which will shut out all knowledge of the liability for and the nonpayment of its withholding taxes. Such actions constitute a deliberate or reckless disregard of the facts and constitute willfulness. *Bolding v. United States*, 215 Ct.Cl. 148, 565 F.2d 663, 674 (1977); *Calderone v. United States*, 799 F.2d 254, 259–260 (6th Cir. 1986).

■■■ 34. A responsible person who is aware of and has experience with the federal withholding system may not claim "reasonable cause" because of his ignorance and failure to understand his withholding responsibilities. *Sorenson v. U.S.*, 521 F.2d 325, 329 (9th Cir.1975).

■■■ 35. A responsible person, who does not know whether withholding taxes have been paid, acts in reckless disregard if he could easily find out about the delinquent taxes by asking someone who has the corporate duties of paying the bills. *Internal Revenue Service v. Blais*, 612 F.Supp. 700, 710–711 (D.Mass.1985).

■■■ 36. Chabrand argues that he delegated the payroll tax responsibility to David Kramer and that for this reason, he should not be liable for the Trust Fund Recovery Penalty. The mere delegation of responsibility to another does not constitute reasonable cause. *Mazo, supra.*

37. Chabrand, a responsible person, was aware of Trailnor's financial state because he visited once every two to three weeks and spent the time discussing the business with David Kramer. He spoke with Kramer on the telephone as well. He, along with all the company employees, knew that Trailnor was having difficulty paying its creditors and making payroll. Still, Chabrand ignored Trailnor's dire financial situation and the duty of ensuring that the payroll taxes were timely paid to the Government. Chabrand understood the obligations involved in running the company because he had run companies in Mexico and complied with the social security withholding obligations in that country. Therefore, when Trailnor suffered financial problems, Chabrand, as president, sole stockholder and sole board member, had a duty to inquire as to whether withholding payments were being made to the IRS. Instead, Chabrand put blinders on and made no inquiry as to whether the taxes were being paid, and they went unpaid for seven quarters. During that time he sold and mortgaged company real property for over $300,000, in the middle of 1999, and paid others while the Government went unpaid. Chabrand's failure to inquire into the payment of the payroll taxes and subsequently apply any available monies to those unpaid taxes, evidences a reckless disregard under Section 6672.

*Boulding, Calderone, Sorenson and Blais, supra.*

38. Other indicators that Chabrand was willful include the fact that he spent time from the beginning reviewing the company checks to ensure that Kramer was not diverting monies from Trailnor. Because Trailnor had satisfied all of its payroll tax obligations going into the first quarter of 1998, Chabrand would have seen or known of checks payable to IRS for payment of payroll taxes. When Chabrand continued his review of the checks subsequent to the first quarter of 1998, Chabrand should have noticed that no checks were being written to the IRS and, as president, sole shareholder and sole director, should have fulfilled his duty to ask Kramer why those payments had ceased. Additionally, Trailnor had failed to pay its excise tax obligations as early as 1995. Once such a deficiency arose, Chabrand was on notice that Kramer was not complying with his duties to ensure that Trailnor's tax obligations were satisfied. As

such, Chabrand had a duty to investigate or to correct this mismanagement and his failure to do so was a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government. *Mazo*, 591 F.2d at 1154–1155.

39. Chabrand was a responsible person under Section 6672 who wilfully failed to collect and pay over such tax to the Government.

■■■ 40. Debtor asserts that a bank account levied upon by the IRS pre-petition is separate property of his spouse. The United States asserts that the Court does not have jurisdiction over property issues pursuant to a Section 505 Motion, because Section 505 deals exclusively with the determination of tax liabilities. These monies were levied on pre-petition and have no effect on Chabrand's is liability for the Trust Fund Recovery Penalty, the sole Section 505 issue. The property issues raised by Chabrand are Section 541 issues, which have been raised by the Government in the United State of America's (Internal Revenue Service) Objection to Debtor's Plan of Reorganization, filed on July 17, 2003. To the extent that any property issues exist, they should be dealt with in conjunction with Debtor's confirmation.

41. Any conclusion of law which is more properly deemed to be a finding of fact is to be considered a finding of fact.

### CONCLUSION

Chabrand is personally liable for the 941 payroll taxes of Trailnor because he is a responsible person under Section 6672. The IRS' mistake in Chabrand's street address was a minor error and did not cause the notice of deficiency to be mailed to an address other than Chabrand's "last known address". The notice was returned "unclaimed" not "undeliverable". The inconsequential error does not invalidate the notice. Counsel for the IRS shall prepare a final judgment in conformance with the Findings of Fact and Conclusions of Law and submit them to chambers on or before November 3, 2003.

### FINAL JUDGMENT

Debtor, Oscar Antonio Chabrand, commenced this action by filing a Section 505 Motion on April 17, 2003, challenging the IRS assessment against him for Section 6672 Trust Fund Recovery Penalties for all four quarters of 1998 and the first three quarters of 1999. On August 18, 2003, Debtor filed an Amended Section 505 Motion. Debtor asserts he is not liable for the 6672 penalties.

The Court, having tried the issues, has determined that a Final Judgment should be entered in conformance with the Court's findings of fact and conclusions of law. Accordingly, it is hereby

ORDERED, ADJUDGED and DECREED that:

1. Mr. Chabrand is a responsible person under 26 U.S.C. § 6672 for Trailnor, Inc.'s unpaid federal employment taxes required to be withheld from employees' wages for all four quarters of 1998 and the first three quarters of 1999;

2. Mr. Chabrand willfully failed to collect, account for, or pay over those subject trust fund monies as provided by 26 U.S.C. § 6672;

3. Mr. Chabrand is indebted to the United States for the unpaid trust fund monies in the amount of $129,489.75 as of October 29, 2001, plus interest and all statutory additions thereon as provided by law until paid; and

4. Debtor's Section 505 Motion and Amended Section 505 Motion are dismissed with prejudice, except as to the property issues raised in Debtor's Amended Section 505 Motion, of which the Court

has no jurisdiction over in this Section 505 proceeding.