**Doyle W. PARR Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–01–252.**

United States District Court, S.D. Texas, Corpus Christi Division.

March 13, 2002.

William A Roberts, Attorney at Law, Darryl V Pratt, The Roberts Law Firm, Dallas, for Doyle W Parr, plaintiffs.

David B Coffin, Dept of Justice, Tax Division, Dallas, for United States of America, defendants.

### ORDER GRANTING UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

JACK, District Judge.

On this day came on to be considered the United States of America's ("Defendant" or "the Government") Motion for Summary Judgment in the above-styled action. For the reasons stated herein, the Court GRANTS the Defendant's Motion. Further, because the Court determines that Plaintiff Doyle W. Parr ("Parr" or

"Plaintiff") is a responsible person who acted willfully, the Government is entitled to the assessment it made pursuant to 26 U.S.C. § 6672.

## I. JURISDICTION

The Court has federal question jurisdiction over this 26 U.S.C. § 6672 suit pursuant to 28 U.S.C. §§ 1340, 1346.

## II. FACTS AND PROCEEDINGS

The above-captioned case arises from the failure of Rockport Fabrication, Inc. ("RFI") to pay employment taxes to the IRS for the third and fourth quarters of 1994 and the first, second, and third quarters of 1995. (Pl's. Response to Def's. Motion for Summary Judgment at 5.) This is an action for the Trust Fund Recovery Penalty (also known as the "100% Penalty") pursuant to 26 U.S.C. § 6672.

Doyle W. Parr ("Parr" or "Plaintiff") and James Brown ("Brown") started RFI in 1994. (Pl's. Opposition to Def's) Parr was a 45% shareholder in RFI. He was also RFI's vice president and general manager until RFI's downfall in November 1995. (Def's. Motion for Summary Judgment ¶ 2, 4.) Brown and Cheryl Brown, his wife, owned the remaining RFI shares, with Brown serving as RFI's president and Cheryl Brown serving as the Corporate Treasurer. (Id.; Pl's. Response at 8.) RFI provided oil field services, including oil field work after the drilling of the well and dredge operations for the Island Mooring marina. (Id. ¶ 3.) Brown and his wife contributed $40,000 in capital to start RFI and an additional $10,000 later; Parr contributed no money to RFI, instead providing his knowledge and contacts. (Def's. Motion for Summary Judgment ¶ 6; Pl's. Response at 7.) Brown had primary responsibility for the financial matters of RFI, and he drafted and filed RFI's corporate documents. (Def's. Motion for Sum-

mary Judgment ¶ 11; Pl's. Response at 8.) Brown also held primary responsibility for managing the payroll process and prepared, reviewed, and signed every payroll tax return filed by RFI with the IRS except the third quarter 1995 return, signed and filed by Cheryl Brown. (Pl's. Response at 8–9.) Brown used his own personal computer to manage the accounting and payroll for RFI; he brought the computer to the RFI offices, which were located at Parr's home. (Def's. Motion for Summary Judgment ¶ 14; Pl's. Response at 9.) Brown was trained on the use of the computer and the accounting software, while Parr did not know how to operate a personal computer. (Pl's. Response at 9.) Parr's primary duties and responsibilities were managing the fabrication and dredging projects in the field (Pl's. Response at 9); however, Plaintiff admitted he also had some responsibility for hiring and firing employees, dealing with major suppliers and customers, negotiating corporate purchases and contracts, signing some checks, and co-signing on corporate bank loans. (Def's. Motion for Summary Judgment ¶ 9, Ex. 1–2.) Though Brown was responsible for paying corporate creditors, Brown, Cheryl Brown, and Plaintiff all had signature authority on the corporate bank accounts. (Pl's. Response at 10.) Plaintiff signed checks when disbursements needed to be made and Brown was not at the office; Plaintiff did not need Brown's authorization to sign checks. (Def's. Motion for Summary Judgment ¶¶ 23–24, Ex.1.)

RFI failed to make sufficient payroll tax deposits such that at the time the company filed its payroll tax returns for the quarters ending September 30, 1994 through September 30, 1995, the following taxes were unpaid: (1) September 30, 1994: $17,705.35; (2) December 30, 1994: $17,958.45; (3) March 31, 1995: $10,129.62; (4) June 30, 1995: $8,728.90; and (5) Sep-

tember 20, 1995 $6,175.89. (Def's. Motion for Summary Judgment ¶ 29, Ex. 7.) Plaintiff acknowledges that Brown advised him of the payroll tax problem in February or March of 1995. (Pl's. Response at 11.) During the time period from March through October of 1995, substantial amounts of money were deposited into company accounts. Specifically, a total of $159,730.84 was deposited into RFI's Victoria (now Wells Fargo) Bank account, and $131,802.58 was deposited into RFI's Frost Bank account. (Def's. Motion for Summary Judgment ¶ 34, Exs. 8–9.) Despite having knowledge of the tax deficiency, and after substantial deposits were made into company accounts post-deficiency, both Brown and Parr continued to sign company checks and pay other company creditors and expenditures during the March 1995 through October 1995 time period. (Def's. Motion for Summary Judgment ¶ 33, Exs. 3–5.) Parr also borrowed money to pay the payroll in or around June or July 1995; he paid the money back with a company check. (Def's. Motion for Summary Judgment ¶ 36., Exs. 1, 5.)

On August 30, 1995, Parr met with Brown and with T. Hardie Bowman, CPA, in Corpus Christi, to discuss the payroll tax problem, and Brown and Bowman advised Parr that the company could resolve the tax problem by entering into an installment plan with the Internal Revenue Service ("IRS"). (Def's. Motion for Summary Judgment ¶ 40–41, Ex. 1.) Parr and Brown met with an Internal Revenue Service Officer, Mr. Jasso, and proposed an installment payment plan. (*Id.*) Parr admitted in his deposition that he believed at the time he spoke with Mr. Jasso that RFI could not make the payments according to the installment payment plan set up; instead, Parr believed that RFI was "going

to get deeper in the hole." (Id. at ¶ 42, Ex. 1.) RFI eventually defaulted on its installment payment plan. (*Id.* at ¶ 45.)

After a meeting with Mr. Jasso held on March 31, 1996, Plaintiff was assessed the Trust Fund Recovery Penalty in the amount of $38,483.44 for the aforementioned tax periods on October 28, 1996. (Def's. Motion for Summary Judgment ¶ 48.) The IRS collected the following amounts from Parr, each of which was applied toward the Trust Fund Recovery Penalty: (1) $449.20 on January 13, 1998; (2) $449.20 on February 17, 1998; (3) $449.20 on March 15, 1998; and (4) $100.00 on January 30, 2001. (Def's. Motion for Summary Judgment ¶¶ 49–52.) On or about April 19, 2001, Parr submitted to the IRS an administrative claim for refund for the Trust Fund Recovery Penalty; the IRS denied this claim on May 15, 2001. (Pl's. Complaint ¶¶ 6–7.) On June 7, 2001, Parr filed the Complaint in the instant action, alleging he was not responsible for collecting, accounting for, and paying over employment and withholding taxes and that his actions were not willful. (Pl's.Compl.¶ 8.) On August 28, 2001, Defendant filed its Original Answer and Counterclaim to Plaintiff's Complaint, asserting in pertinent part that (1) Plaintiff was barred by the statute of limitations from claiming entitlement to a refund with regard to portions of the money paid towards the Trust Fund Recovery Penalty; and (2) Plaintiff was a responsible person under the provisions of 26 U.S.C. § 6672 who willfully failed to pay over the trust fund taxes of RFI owed the IRS.

On January 14, 2002, Defendant timely filed the instant Motion for Summary Judgment, asserting entitlement to dismissal of Plaintiff's claims [1] and recovery

---

1. Defendant also claims that Plaintiff is barred by the statute of limitations from re-

covering $1,348.50 of the amounts paid towards the Trust Fund Recovery Penalty.

of the entire remaining balance of the assessed Trust Fund Recovery Penalty.[2] On February 5, 2002, Plaintiff filed an Agreed Motion to Extend Time to Respond to Defendant's Motion for Summary Judgment. The Court, in accordance with its General Order stating that the dispositive motion deadlines are not extendable, even by agreement, denied Plaintiff's Motion.[3] On February 14, 2002, Plaintiff filed (1) a Motion to Reconsider Order Denying Unopposed Motion to Extend Time for Plaintiff to Respond to Defendant's Motion for Summary Judgment; (2) an Unopposed Motion for Leave to File Out of Time Response to Defendant's Motion for Summary Judgment; (3) a thirty-page Brief in Support of Plaintiff's Opposition to United States of America's Motion for Summary Judgment; and (4) an Unopposed Motion for Leave to File Memorandum Greater than 25 Pages. Though this Court reiterates that Plaintiff had a duty to comply (and failed to so comply) with the Court's General Order and with the Federal Rules of Civil Procedure, the Court will consider Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

The Court now considers Defendant's Motion and Plaintiff's Response.

## III. DISCUSSION

### A. GENERAL SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir.1996).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense to warrant judgment

---

Because this Court ultimately determines Defendant was entitled to find Parr a responsible person who acted willfully, *infra*, the statute of limitations issue is MOOT.

2. Defendant has provided evidence that the current unpaid portion of the Trust Fund Recovery Penalty assessed against Parr is $37,199.84 (Def's. Motion for Summary Judgment ¶ 58, Ex.10.)

3. The Court notes that even the Agreed Motion to Extend was untimely filed *after* the deadline for Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

in [its] favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis original). . However, if the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2554; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995) (When the movant has satisfied its initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1024 (5th Cir.1995) (citing *Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir.1977)). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. However, the court must draw all justifiable inferences from the summary judgment evidence in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513; *Pasant v. Jackson Nat'l Life Ins. Co.,* 52 F.3d 94, 96 (5th Cir.1995).

"[T]he papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party." *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir.1987). However, the non-movant must make more than bare allegations of a claim, for "[t]o permit the pleadings themselves to carry a case to trial when they rest on the invention of counsel would permit the ultimate circumvention of Federal Rule of Civil Procedure 11." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1196 (5th Cir.1986). Neither conclusory allegations nor unsubstantiated assertions will satisfy a non-movant's burden. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999)("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence" in a summary judgment motion.); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### B. The "100% Penalty" Pursuant to 26 U.S.C. § 6672

### 1. Relevant General Law Regarding Liability for Unpaid Employment Taxes

 Employers are required in accordance with federal law to withhold from their employees' paychecks their shares of federal social security taxes and income taxes. *See Barnett v. IRS,* 988 F.2d 1449, 1453 (5th Cir.1993), *cert. denied* 510 U.S. 990, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993) (citing 26 U.S.C. §§ 3102 and 3402). This

is a situation in which the employer holds these withheld taxes "in trust" for the Government, and the employer is then required to pay these withheld taxes over to the Government. *Id.; Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987). Where an employer fails to remit these withheld taxes, the Government's only recourse is to seek funds from the employer; the employees are not liable to pay the taxes again merely because their employer failed to remit withheld funds. *See, e.g., Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970) (citations omitted) (Section 6672 allows the Government to reach those people responsible for causing the company's failure to pay the taxes). 26 U.S.C. § 6672(a) imposes liability for the delinquent taxes on the employer as well as on *any* person who is required to collect, truthfully account for, or pay over any tax (known as a "responsible person") who willfully fails pay over that tax. *See Barnett,* 988 F.2d at 1453 & n. 6. This penalty, known as the "Trust Fund Recovery Penalty" or the "100% Penalty" is "separate and distinct from the liability imposed on the employer to remit the trust fund taxes." *Stallard v. United States,* 12 F.3d 489, 493 (5th Cir.1994) (per curiam).

■ Generally, to establish liability against Parr, the Government is required to demonstrate that (1) he is a responsible person (2) who willfully failed to pay over the taxes. *See Barnett,* 988 F.2d at 1453. However, where, as here, the Government has offered a Section 6672 assessment into evidence, the burden shifts and Parr must disprove his responsible person status or willfulness. *Id.* Parr, as a plaintiff seeking a refund of a partial payment made to-wards a penalty assessed pursuant to Section 6672, has the burden of proving that he is not a responsible person, even where, as here, the government has counter-claimed for the remainder of the tax.

*Morgan v. United States,* 937 F.2d 281, 285 (5th Cir.1991) (per curiam) (adopting opinion of Fitzwater, J.) (citing *Liddon v. United States,* 448 F.2d 509, 513–14 (5th Cir.1971)).

**2. "Responsible Party"**

■ "This [C]ircuit takes a broad view of who is a responsible person under § 6672." *Logal v. United States,* 195 F.3d 229, 232 (5th Cir.1999) (citing *Barnett,* 988 F.2d at 1454). The Fifth Circuit has opined that "this serves a valuable prophylactic purpose: it encourages officers, directors, and other high-level employees to stay abreast of the company's withholding and payment of employee's taxes." *Id.* (quoting *Barnett,* 988 F.2d at 1454). Whether Parr is held to be a responsible person turns on the issue of his "status, duty, and authority." *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991). While determining who is a responsible person is a mixed question of law and fact, "certain facts will almost invariably prove dispositive of a finding of esponsibility." *Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1454 (5th Cir.1993). When those facts are present, judgment as a matter of law is appropriate. *Id.* at 1457. The Court must determine whether the taxpayer possessed "the effective power to pay the taxes." *Id.* (citing *Howard v. United States,* 711 F.2d 729, 734 (5th Cir. 1983)). In making this inquiry, the Court should consider whether the taxpayer "had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." *Barnett,* 988 F.2d at 1454. The Fifth Circuit looks to a non-exhaustive list of factors in determining responsibility pursuant to Section 6672, asking whether the taxpayer at issue (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv)

has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. *Logal,* 195 F.3d at 232 (quoting *Barnett,* 988 F.2d at 1455). "No single factor is dispositive." *Barnett,* 988 F.2d at 1455.

Plaintiff goes to great lengths to attempt to convince the Court that he is not a "responsible party" as that term is understood in the Fifth Circuit. The crux of Plaintiff's argument appears to be that (1) Brown was more educated than Plaintiff, handled all the financial affairs of RFI and was responsible for the daily administrative operations of the business, and took advantage of Plaintiff's naivete in business affairs by failing to disclose the true financial condition of RFI; and (2) Plaintiff's responsibilities were limited to bidding the fabrication and dredging jobs, and managing the fabrication and dredging workers. While the Court is not unsympathetic to Plaintiff's plight, the Court is constrained by precedent to conclude that Plaintiff is, in fact, a responsible party. Plaintiff was vice-president and general manager of RFI. Plaintiff owned a substantial amount of stock in RFI. Plaintiff admittedly managed some, though not all, of the day-to-day operations of the business. Among other things, he dealt with suppliers and bid for jobs, he ran the operations in the field, and he admitted he had the authority to hire and fire employees. Importantly, Plaintiff possessed the authority to sign company checks and, as discussed *infra,* signed checks to other creditors *after* discovering that taxes were delinquent. Plaintiff admits he needed no authorization from Brown to sign checks. He borrowed money to make payroll when the company had financial difficulties.

Finally, the fact that Brown exercised greater influence and control over the financial operations of RFI does not negate Parr's responsible person status. As has been noted by the Fifth Circuit, "[t]here may be—indeed, there usually are—multiple responsible persons in any company." *Barnett,* 988 F.2d at 1455. Section 6672 "applies to all responsible persons, not just to the most responsible person." *Gustin v. United States,* 876 F.2d 485, 491 (5th Cir.1989). The focus of the responsible person inquiry is not upon whether Brown exercised greater authority than that which was exercised by Parr, but upon whether Parr had the status, duty, and authority that gave him the *effective power* to pay RFI's payroll taxes. In sum, according to the standards set out by the Fifth Circuit, Parr is a responsible person.

3. "Willfulness"

Because this Court has found Parr to be a "responsible person" under Section 6672, he must now prove that he did not act willfully in order to avoid liability under that Section. *See Morgan,* 937 F.2d at 286 ("The responsible person bears the burden of proving [the] actions [taken] were not willful.") (citations omitted). As has been stated by the Fifth Circuit, "the willfulness inquiry is the sifter in most § 6672 cases." *Barnett,* 988 F.2d at 1457. Further, proof of "[w]illfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent." *Id.; Morgan,* 937 F.2d at 285. "A responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors, or if he recklessly disregards the risk that the taxes may not be remitted to the government." *Logal,* 195 F.3d at 232 (citing *Barnett,* 988 F.2d at 1457; *Gustin,* 876 at 492). Moreover, "[a] responsible person who learns of the underpayment of taxes must

use later-acquired unencumbered[4] funds to pay the taxes; failure to do so constitutes willfulness." *Id.* One way to demonstrate willfulness is to produce evidence that the allegedly responsible person "paid other creditors with knowledge that withholding taxes were due at the time to the United States." *Barnett,* 988 F.2d at 1457; *Howard,* 711 F.2d at 736 ("A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness.") Undisputed evidence that the responsible person failed to do so ordinarily establishes willfulness as matter of law. *Barnett,* 988 F.2d at 1457 (citing *Howard,* 711 F.2d at 735; *Mazo v. United States,* 591 F.2d 1151, 1157 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979)); Frey v. United States, 2001 WL 493136 (N.D.Tex. May 4, 2001) (once taxpayer became aware of the tax liability, taxpayer must ensure that the taxes were paid before any payments were made to other creditors; undisputed government evidence of a failure to do so establishes willfulness as a matter of law). Plaintiff argues that, because there was an installment agreement between RFI and the Government, a finding of willfulness is improper. This Court is unpersuaded As was rightly noted by Defendant, the undisputed evidence is that Plaintiff made several payments to creditors *after* learning of the failure of RFI to pay the employment taxes but *before* an installment arrangement was set up. These payments were made to other creditors with knowledge that withholding taxes were due at the time to the United States; this is sufficient to establish willfulness. *See, e.g., Logal,*

195 F.3d at 232 (there was "more than enough evidence to support" finding of willfulness regarding unpaid taxes for the fourth quarter of 1993 and the first two quarters of 1994 where responsible person (1) discovered the failure to pay employment taxes in December 1993 or January 1994; (2) entered into an installment agreement with the IRS in May 1994 regarding unpaid taxes for last three quarters of 1993 and first quarter of 1994; and (3) made payments to other creditors between March and July 1994). Further, Parr himself admitted he never believed that RFI could make the installment payments, which clearly supports a finding that he, at the very least, recklessly disregarded the risk that the taxes might not be remitted to the government. Though this Court is convinced that Parr possessed no ba@d intent, willfulness does not require such a showing.

The Court finds that Parr acted willfully. In sum, because Parr was a responsible party who acted willfully in failing to pay taxes due the Government, Defendant is entitled to summary judgment in its favor.

## IV. CONCLUSION

In conclusion, the Court GRANTS Defendant's Motion for Summary Judgment. Because this Court finds that Parr is a responsible person who acted willfully, the Government was entitled to assess a penalty pursuant to 26 U.S.C. § 6672 and is entitled to dismissal of Parr's action against it. Further, the Government is entitled to recover from Parr the sum of $37, 199.84, which represents the balance

---

**4.** Funds are "encumbered" only if they are subject to restrictions imposed by a creditor with an superior interest to the IRS precluding the taxpayer from using the funds to pay the taxes. *Barnett,* 988 F.2d at 1458. There is no evidence that any of the funds Plaintiff used to make payments to creditors other than the IRS were encumbered.