# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 22, 2010

No. 09-30392

Lyle W. Cayce
Clerk

S. P. DAVIS, SR.,

Plaintiff–Counter Defendant–Appellant,

v.

UNITED STATES OF AMERICA,

Defendant–Counter Claimant–Appellee,

v.

WILLIE J. SINGLETON; PHILLIP PENNYWELL, JR.; JAMES C.
WILLIAMS; SAMUEL W. STEVENS, III,

Counter Defendants–Appellants.

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-CV-158

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

S. P. Davis, Sr., Willie J. Singleton, Phillip Pennywell, Jr., James C.
Williams, and Samuel Stevens, III, appeal the district court's grant of summary
judgment in favor of the United States.  The appellants argue that the district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-30392

court erred in ruling that the appellants were liable for failing to remit to the United States certain employment taxes withheld from the wages of employees at three companies. We affirm.

I

Davis, Singleton, Pennywell, and Williams (jointly, the owners) were equal owners, officers, and members of the board of Winward Institute, doing business as Winward Hospital (Hospital), Winward Health Care Center (Clinic), and Mynex (together, the companies). The Hospital and Clinic provided medical services to Louisiana patients. Mynex provided the Hospital and Clinic with management, transportation, therapy, and marketing services, as well as pharmaceutical services and products.

Mynex's management division provided the officers, vice presidents, and all accounting functions—including, but not limited to, payroll, billing and accounts receivable, accounts payable, and reporting—for the companies. From 1997 onward, Stevens served as the vice president of finance for Mynex. Stevens initially reported to Dan Reid, the executive vice president of Mynex, but when Reid left at the end of 1997, Stevens reported directly to the board.

The Hospital generated most of its income through Medicare and Medicaid payments. In 1997, after Medicare reduced its reimbursement rates and an audit determined that the Hospital had been overpaid by Medicare, the Hospital experienced significant financial problems. These problems led it to cut staff and implement a number of other cost-cutting measures. The Hospital also entered into a financing agreement with Daiwa, a financial services company, under which Daiwa provided periodic loans to the Hospital equal to a portion of the Hospital's accounts receivable.

Shortly after his hiring, Stevens learned that the companies were delinquent in the payment of their federal trust fund taxes. The owners learned of the payroll tax problems in the fall of 1997, when a paralegal discovered in a

2

local legal publication that a federal tax lien had been filed against the companies. After becoming aware of the tax problems, the owners met with Stevens and Reid and instructed them never to fall behind in paying payroll taxes again. The owners told Stevens to contact the Internal Revenue Service (IRS), determine the amount of tax liability, negotiate a payment agreement, and report back to the board. Stevens communicated with the IRS and later reported to the board that he had entered into an installment agreement with the IRS concerning the companies' delinquent taxes and that current payroll taxes were being properly paid.

The parties dispute whether the IRS and the companies actually entered into an installment agreement. The record shows that Stevens sent the IRS a proposed agreement regarding the Hospital's and Mynex's overdue taxes. Stevens had multiple conversations with an IRS revenue officer about a possible installment agreement. The IRS case history notes show that the IRS revenue officer repeatedly requested, and was awaiting, information from the companies. There is no evidence, however, that an installment agreement was ultimately consummated.

Throughout this time, the companies continued to make payments to outside creditors other than the IRS. Stevens admitted that, beyond discussing the matter with the IRS, he did nothing to ensure that the companies' payroll taxes were being timely paid.

In the spring of 1998, the Hospital's creditors filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code, which was later converted to a voluntary Chapter 11 proceeding. After the filing, the owners learned that Stevens had failed to correct the payroll tax deficiencies. The Hospital continued as a debtor-in-possession until a Chapter 11 trustee was appointed in the summer of 1998. The bankruptcy was subsequently converted back to a Chapter 7 proceeding and was terminated in 2006.

No. 09-30392

Pursuant to Internal Revenue Code § 6672(a), the IRS issued assessments against the appellants for the companies' unpaid trust fund portions of federal employment taxes. Stevens was assessed $2,210,937.53, while each owner was assessed $2,233,514.43. Davis paid a portion of the assessment and filed for a refund with the IRS. When the claim was denied, Davis filed this suit to recover the amounts paid. The United States counterclaimed, and also filed suit against Singleton, Pennywell, Williams, and Stevens, for the full amounts assessed, plus interest and penalties. All of the defendants denied liability for the unpaid taxes.

The district court granted summary judgment in favor of the United States, finding that the owners and Stevens were responsible persons who had willfully failed to pay over to the United States the withholding taxes, and thus that they were jointly and severally liable under § 6672 for a penalty equal to the amount of the unpaid taxes. This appeal followed.

## II

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.[1] Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2]

Employers are required to withhold federal social security and income taxes from their employees' wages and to pay these taxes to the IRS.[3] These withholdings are held in a special trust fund for the benefit of the United States.[4] Each employee is considered to have paid the taxes, even if the

---

[1] *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(c).

[3] I.R.C. §§ 3102(a), 3402(a).

[4] *See Howard v. United States*, 711 F.2d 729, 733 (5th Cir. 1983) (citing I.R.C. § 7501).

4

No. 09-30392

employer has failed to pay over the funds to the United States.[5]  "When a corporate employer neglects to pay the required taxes, section 6672(a) authorizes the Government to assess the full amount of taxes due against the corporation's responsible officers in the form of a penalty."[6]  Section 6672(a) provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall . . . be liable for a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

We have held that § 6672(a) imposes two requirements for liability: "the person must be a 'responsible person' and the person must act 'willfully' in not paying the taxes."[7]

Conceding that they are responsible persons, the owners contest only whether their failure to remit taxes was willful.  Stevens, however, contests both the district court's determination that he is a responsible person and its determination that he acted willfully in not paying the taxes due.

## A

To serve the prophylactic purpose of encouraging "officers, directors, and other high-level employees to stay abreast of [a] company's withholding and payment" of payroll taxes, we take a broad view of who is a "responsible person" under § 6672(a).[8]  Any person who has the "status, duty[,] and authority to pay

---

[5] *Id.*

[6] *Id.*

[7] *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987) (citing *Brown v. United States*, 591 F.2d 1136, 1139-40 (5th Cir. 1979)).

[8] *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999) (citing *Barnett v. IRS*, 988 F.2d 1449, 1454, 1457 (5th Cir. 1993)).

the taxes owed" is a responsible person.[9]  An individual may be a responsible person even if he is not the person *most* responsible for the payment of taxes.[10] "There may be—indeed, there usually are—multiple responsible persons in any company."[11]  The "crucial inquiry" is whether a person, "by virtue of his position in (or vis-a-vis) the company, could have had substantial input into such decisions, had he wished to exert his authority."[12]

We have little trouble concluding that Stevens is a responsible person under § 6672(a).   As vice president of Mynex, Stevens—by his own admission—authorized payroll checks, prepared federal payroll tax returns, authorized payment of federal tax deposits, reviewed federal income tax returns, directed the payment of bills, dealt with major suppliers and customers, negotiated large corporate purchases, contracts, and loans, and determined company financial policy.  He also headed the Mynex accounting department, which provided all accounting functions, including billing and reporting, for the Hospital and the Clinic.  He represented the companies in communications with the IRS.  These undisputed facts are ample evidence that Stevens was a responsible person—that is, he could have had substantial input into the decision whether to withhold and pay the trust fund taxes, had he wished to exert this authority.

Stevens argues that he was not a responsible person because he did not satisfy a sufficient number of the six indicia of responsible person status set out

---

[9] *Howard*, 711 F.2d at 734.

[10] *Barnett*, 988 F.2d at 1455 (citing *Howard*, 711 F.2d at 737).

[11] *Id.*

[12] *Id.* (internal quotation marks omitted).

in *Barnett v. IRS*.[13]    This position fails because "[n]o single factor is dispositive."[14]  The record shows that Stevens had significant authority over the relevant day-to-day operations of the company, he had the authority to hire at least some employees, and he made decisions about the disbursement of funds. Most importantly, the record clearly shows that Stevens was intimately involved in the process of determining and paying the payroll taxes and thus could have had substantial input into decisions on this matter.  For that reason, he is a responsible person within the meaning of § 6672(a).

## B

In order to be liable for the penalty under § 6672(a), a responsible person must also have acted willfully in failing to pay the taxes due.[15]  "Willfulness requires merely a voluntary, conscious, and intentional act; a bad motive or evil intent is not necessary."[16]  A "responsible person acts willfully if he knows the taxes are due but uses corporate funds to pay other creditors, or if he recklessly disregards the risk that the taxes may not be remitted to the government."[17] Although the willfulness inquiry is usually a factual question, "evidence that the responsible person had knowledge of payments to other creditors after he was

---

[13] *Id.* ("The factors we consider are indicia [of a person's authority over an enterprise's financial or general decisionmaking].  We ask whether such a person:

> (i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks.).

[14] *Id.*

[15] *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987).

[16] *Id.* at 415.

[17] *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999) (internal citations omitted).

aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness."[18]

Stevens became aware of the tax deficiencies in early 1997, and the owners learned of the deficiencies in the fall of 1997. Despite this knowledge, the companies continued to make payments to employees and outside creditors. The owners continued to sign checks presented to them by the accounting department for payments to creditors. Moreover, Stevens admitted that he and the owners authorized payments to Medicare, Daiwa, vendors, and employees while the delinquent taxes were accruing. These are precisely the kinds of actions that we have found to demonstrate willfulness under § 6672(a).[19]

The owners and Stevens present a number of unavailing reasons they should not be considered to have acted willfully in failing to pay the trust fund taxes. First, they argue that an installment agreement existed between the IRS and the companies, allowing the companies to continue operating while paying the delinquent taxes over time. If an agreement existed, the owners and Stevens could not be liable for willfully failing to pay the trust fund taxes, as long as they complied with the terms of the agreement.

Once the Government offers an assessment into evidence, the burden of proof to show an absence of willfulness lies with the responsible person.[20] Therefore, in order to avoid summary judgment, the owners and Stevens must show there is a genuine issue of material fact concerning whether an installment agreement existed. They have failed to do so. To be sure, the IRS case history notes mention that the parties entered into negotiations about a possible installment agreement, and the revenue officer even states that he planned to

---

[18] *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979).

[19] *Id.* at 1156-57.

[20] *Barnett v. IRS*, 988 F.2d 1449, 1453 (5th Cir. 1993) (internal citations omitted).

recommend the agreement to IRS officials. But there is no evidence that the negotiations led to an agreement, and the case history notes demonstrate that the revenue officer repeatedly requested, and was awaiting receipt of, additional information from the companies. Neither the owners nor Stevens point to any evidence that an installment payment plan was ever finalized, beyond their own bare assertions of that fact. Such assertions are insufficient to create a genuine issue of material fact.[21]

Moreover, even if an installment agreement existed, it is clear that the companies did not abide by it. Stevens testified that, under the agreement, the companies were required to keep current with newly arising taxes and to gradually pay the past-due employment taxes. But the record shows that the companies fell further behind in paying the employment taxes due in the first three quarters of 1998. There is also no evidence that the companies made progress on paying the delinquent taxes.

The owners argue that they made reasonable efforts to see that the trust funds were paid, instructing Stevens and Reid to rectify the problem at an emergency board meeting held immediately after the owners learned of the tax problems. While we recognize that "reasonable cause may excuse the failure to collect, account for, or pay over withholding taxes, the mere delegation of responsibility to another does not constitute reasonable cause."[22] Neither does the owners' reliance on Stevens' representations that he entered into an installment agreement with the IRS constitute reasonable cause. Indeed, in *Mazo*, we determined that the defendants' reliance on representations by the company controller that he had or would address the company's tax problems

---

[21] *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995) (A "bare allegation, unsupported by any evidence, is not sufficient to defeat summary judgment.").

[22] *Mazo*, 591 F.2d at 1155 (internal citation omitted).

was insufficient to create an genuine issue of material fact with regard to willfulness.[23]

The owners also argue that, after they learned of the tax liabilities, the taxes could not be paid because the companies' later-acquired funds were encumbered, first by the financing agreement with Daiwa and later by the bankruptcy. The burden to prove that funds are encumbered falls on the owners, as that issue is part of the larger willfulness inquiry.[24] The owners again fail to point to any evidence—aside from their bare assertions—that disbursements were controlled by Daiwa. Indeed, by Stevens' admission, he and the owners continued to authorize payments to Medicare, Daiwa, vendors, and employees while the delinquent taxes were accruing. The owners also fail to show that later-acquired funds were encumbered by the bankruptcy. Again, the record shows just the opposite: while acting as a debtor-in-possession, the Hospital petitioned the bankruptcy court for authority to pay Stevens and received its approval. The owners could have petitioned the court for authority to pay the trust fund taxes instead.[25] The owners have failed to show the existence of any encumbrance preventing the companies from paying the IRS.

Finally, the owners assert that a genuine issue of material fact exists regarding whether the assessments were properly calculated. An IRS certificate of assessment provides presumptive proof of the validity of the assessments,[26] and the taxpayer has the burden of overcoming that presumption of

---

[23] *Id.* at 1157.

[24] *Barnett*, 988 F.2d at 1458.

[25] *See Cook v. United States*, 52 Fed. Cl. 62, 71-72 (Fed. Cl. 2002) (holding that a corporation's entry into bankruptcy did not prevent a finding of willful failure to pay taxes when the bankruptcy court had authorized other expenditures).

[26] *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).

No. 09-30392

correctness.[27]  Here, the evidence relied upon by the owners—a lone notation in the IRS case history notes indicating that a case against the Hospital was closed in the spring of 1997—is wholly insufficient to overcome that burden, especially when the same case history notes later indicate that the case was re-opened later that year.  No question of material fact exists with regard to the correctness of the assessments.

### III

The owners argue that they could not properly defend this case because the bankruptcy trustee destroyed the companies' records.  They assert that an adverse inference should be drawn against the IRS, that is, that exculpatory evidence existed within the corporate records that would have corroborated the testimony of the owners and Stevens.  We disagree.  The bankruptcy trustee certified that his motion to destroy the documents was noticed to Davis and Singleton, and there is no evidence that the owners opposed the trustee's motion.  On these facts, we cannot agree that an adverse inference should be drawn against the IRS, as such an inference would effectively shift the burden of proof from the taxpayer to the IRS.

Finally, because we base our conclusion that Stevens is a responsible person on his own admissions,[28] his contention that the document destruction prevented him from proving he was not such a person is meritless. So, too, is his request for sanctions against the United States, as the records were destroyed pursuant to a valid court order by the bankruptcy trustee, not the IRS.

\*       \*       \*

---

[27] *Mersel v. United States*, 420 F.2d 517, 518 (5th Cir. 1969).

[28] II.A, *supra*.

11

No. 09-30392

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the United States.