T.C. Memo. 2021-123

UNITED STATES TAX COURT

PAMELA CASHAW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9352-16L.                    Filed October 27, 2021.

<u>Jay W. Dale</u>, for petitioner.

<u>Karen Lynne Baker</u> and <u>Peter N. Tran</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GREAVES, <u>Judge</u>:  Pursuant to sections 6320(c)[1] and 6330(d)(1), petitioner

seeks review of respondent's determination to proceed with the collection of

_____

[1] Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times, all Rule references are to the Tax Court Rules of Practice and Procedure, and all dollar amounts are rounded to the nearest dollar.

[*2] outstanding section 6672 trust fund recovery penalties (TFRPs) assessed against her. The issue for decision is whether petitioner is liable for TFRPs for the tax periods ending September 30, 2013, and March 31, 2014, and part of the tax period ending June 30, 2014 (periods at issue).[2] For the reasons set forth below, we hold in favor of respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The parties filed stipulations of facts with attached exhibits, which are incorporated herein by this reference. Petitioner resided in Texas when she filed the petition.

Petitioner worked for Riverside General Hospital (Riverside or hospital) in Houston, Texas, for more than 34 years. She began her career as a pharmacist and later assumed administrative responsibilities at the hospital. Following the sudden removal of Riverside's chief administrator, petitioner was appointed temporary chief administrator in October 2012. As temporary chief administrator petitioner oversaw the functionality of Riverside, including the hospital's payroll function;

---

[2] The Appeals Office (defined below) abated $142,480 and sustained $25,905 of the assessed TFRP for the tax period ending June 30, 2014. The sustained amount represents the period for which respondent found petitioner to be a "responsible person" (defined below) during this tax period.

**[*3]** attended board meetings; and had check-signing authority under which she reviewed hospital expenses and signed checks on behalf of Riverside.

Riverside suffered severe financial setbacks during the periods at issue. Riverside's main sources of income, Medicare and Medicaid reimbursements, were drastically cut beginning in late 2013 following acts of Medicaid fraud by petitioner's predecessor. In addition, one of the hospital's creditors, Dixon Financial Services (Dixon), initiated legal proceedings in Texas State court (Dixon lawsuit) in November 2013 to protect an outstanding balance owed by the hospital. As part of the Dixon lawsuit, Riverside entered into a series of agreements with Dixon pursuant to rule 11 of the Texas Rules of Civil Procedure (rule 11 agreements).[3] The rule 11 agreements required Riverside to freeze its bank accounts except for the purpose of making specified payments to certain hospital staff, vendors, and creditors following the approval of Gerry Hilliard (Mr. Hilliard), Riverside's financial consultant and de facto controller.[4] The parties

---

[3] Tex. R. Civ. P. 11 states in pertinent part that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

[4] The record does not show that Mr. Hilliard had check-signing authority on behalf of Riverside.

[*4] acknowledged in at least one of these agreements that they intended for all of the rule 11 agreements to "carry the full authority as [Texas state] [c]ourt [o]rders".

Given Riverside's financial constraints, petitioner was presented with difficult choices during her tenure as temporary chief administrator. In reviewing the hospital's expenses during the periods at issue, petitioner attempted to prioritize payments, sometimes against the terms of the rule 11 agreements,[5] among the hospital's staff, vendors, and private creditors that she deemed provided "essential patient care services". This prioritizing included her refusal at times to sign checks on behalf of Riverside where the purported purposes of the payments did not align, in her eyes, with such patient services. Petitioner was granted a leave of absence on April 18, 2014, and she never returned to work at the hospital.

For the periods at issue Riverside failed to remit to the Internal Revenue Service (IRS) the full amounts of employment taxes and tax withholdings (withheld funds) it reported on its Form 941, Employer's Quarterly Federal Tax Return. Following an investigation, respondent determined that petitioner was liable for these unpaid withheld funds.

---

[5] One rule 11 agreement provided for the payment of any outstanding payroll taxes owed by Riverside for certain payroll periods, but there is no indication that those payments were made.

[*5]   On April 7, 2015, respondent sent Letter 1153, Trust Fund Recovery Penalty Letter, by certified mail to petitioner's last known address, proposing to assert the TFRPs against her for the unpaid employment taxes for the periods at issue.[6]  The envelope containing the Letter 1153 was returned by the U.S. Postal Service to respondent undelivered and marked "unclaimed".  Respondent assessed the TFRPs against petitioner on July 27, 2015.

After petitioner failed to pay the assessed liabilities, respondent sent petitioner Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for the TFRPs on October 6, 2015.  Shortly thereafter, respondent also sent petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.  In response to the lien and levy notices, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, to the IRS Office of Appeals (Appeals Office)[7] in which she challenged the TFRP liabilities.[8]  The settlement officer assigned to petitioner's case requested

---

[6] The Letter 1153 referenced an "enclosed Form 2751", Proposed Assessment of Trust Fund Recovery Penalty, but no such form was submitted into evidence.

[7] This office is now referred to as the Independent Office of Appeals. Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019).

[8] Petitioner did not propose as part of her request or hearing any collection alternatives, such as an installment agreement or an offer-in-compromise.

**[\*6]** financial information from petitioner, which petitioner never provided.

Following petitioner's collection due process (CDP) hearing, respondent issued a

notice of determination in March 2016 sustaining the proposed collection actions.[9]

Petitioner thereafter timely filed a petition with this Court.

OPINION

I.      Jurisdiction, Standard of Review, and Burden of Proof

Sections 6320(c) and 6330(d)(1) grant this Court jurisdiction to review the

Commissioner's determination that a proposed collection action was proper.

Taxpayers who challenge their underlying tax liability in cases arising under

section 6320 or 6330 bear the burden of proof regarding their correct tax liability.

See Rule 142(a); Thompson v. Commissioner, 140 T.C. 173, 178 (2013); see also

Barnett v. IRS, 988 F.2d 1449, 1453 (5th Cir. 1993) (holding the burden of proof is

on the taxpayer to disprove liability for TFRPs).

The liabilities in this case involve TFRPs.  Before TFRPs can be assessed,

however, the Commissioner must generally notify the taxpayer in writing by mail

to the taxpayer's last known address advising that TFRPs will be assessed.  Sec.

---

[9] The Appeals Office issued a supplemental notice of determination in March 2020 that determined that petitioner was not liable for TFRPs for certain tax periods outside the periods at issue.

[*7] 6672(b)(1); Mason v. Commissioner, 132 T.C. 301, 322 (2009). A Letter 1153 satisfies this preliminary notice requirement. See Mason v. Commissioner, 132 T.C. at 317-318, 322. Respondent's issuance of the Letter 1153 on April 7, 2015, by certified mail to petitioner at her last known address satisfied the notice requirement of section 6672 despite its return to respondent undelivered. See id. Thus, the assessment of the TFRPs against petitioner following the mailing of the Letter 1153 was valid, and we may therefore consider the merits of that assessment, i.e., the underlying liabilities, provided petitioner was not statutorily precluded from raising them during her CDP hearing.

A taxpayer cannot challenge an underlying liability in a CDP hearing, and this Court cannot review that liability, if the taxpayer had an earlier opportunity to dispute the assessment of that liability. Sec. 6330(c)(2)(B); Mason v. Commissioner, 132 T.C. at 317. A Letter 1153 provides a taxpayer with an administrative means for protesting a proposed assessment of TFRPs with the Commissioner such that it constitutes an opportunity for the taxpayer to dispute the underlying tax liability for purposes of section 6330(c)(2)(B). See Mason v. Commissioner, 132 T.C. at 317-318. A Letter 1153, however, that is neither received nor deliberately refused by a taxpayer does not constitute an opportunity to dispute the taxpayer's liability. See id. at 318; Fitzpatrick v. Commissioner,

[*8] T.C. Memo. 2016-199, at *18. The record reflects that the Letter 1153 was sent to petitioner's last known address but was not actually received by petitioner. The evidence also does not suggest, and respondent does not claim, that petitioner refused acceptance of the Letter 1153. Accordingly, petitioner was not precluded from raising her underlying liabilities at the CDP hearing, and this Court is not precluded from reviewing them.

Where a taxpayer's underlying tax liability is properly at issue before this Court, we review the Commissioner's determination regarding the underlying liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. Id.; Goza v. Commissioner, 114 T.C. 176, 182 (2000). As part of her appeal to this Court, petitioner challenged only the settlement officer's determination regarding her underlying liability; she did not challenge, either in her pleadings and briefs or at trial, any other administrative determination or allege that the settlement officer failed to verify under section 6330(c)(1) that the requirements of any applicable law or administrative procedure were met. See Dinino v. Commissioner, T.C. Memo. 2009-284, 2009 WL 4723652, at *7 (citing Rule 331(b)(4)) (noting that challenges to a settlement officer's verification duty must be "adequately raised" in the petition); cf. Hoyle v.

[*9] Commissioner, 131 T.C. 197, 200 n.3 (2008) (considering verification issue only where raised in parties' briefs and tried by deemed consent even though not raised in petition), supplemented by 136 T.C. 463 (2011). We accordingly review respondent's determination de novo and do not consider whether the settlement officer abused her discretion.

II.     Trust Fund Recovery Penalties

Employers have a duty to withhold income and employment taxes from their employees' wages.[10] Secs. 3102(a), 3402(a). When net wages are paid to an employee and the employer does not pay over the withheld funds, the IRS has no recourse against the employee. Mazo v. United States, 591 F.2d 1151, 1154 (5th Cir. 1979). For this reason, section 6672 provides a collection tool allowing the Commissioner to impose penalties on certain persons who fail to withhold and pay over trust fund taxes. See Newsome v. United States, 431 F.2d 742, 745 (5th Cir. 1970). The penalty under this section is equal to the total amount of the tax not paid over and is imposed on (1) any responsible person who (2) willfully fails to collect, account for, and pay over the tax. Mazo, 591 F.2d at 1154.

---

[10] These withheld funds are often referred to as "trust fund taxes" because sec. 7501(a) characterizes such withholding as "a special fund [held] in trust for the United States." Mason v. Commissioner, 132 T.C. 301, 321 (2009).

[*10]  A.  Responsible Person

A responsible person is any person required to collect, account for, and pay over withheld taxes.  Sec. 6672(a); Mazo, 591 F.2d at 1154.  Whether someone is a responsible person is "a matter of status, duty and authority, not knowledge." Mazo, 591 F.2d at 1156.  The U.S. Court of Appeals for the Fifth Circuit, the court to which an appeal of this case would lie, "generally takes a broad view" of who may be a responsible person and considers some of the following factors in making this determination:  (1) the individual's status as an officer or member of the business' board of directors; (2) the individual's role in managing the day-to-day operations of the business; (3) whether the individual made decisions as to the disbursement of funds and payment of creditors; and (4) the individual's authority to sign checks on behalf of the business.  Barnett, 988 F.2d at 1454-1455.  No single factor is dispositive, with the crucial inquiry being whether the person, by virtue of the person's position in the company, had the "effective power" to pay the taxes owed based on their actual authority or ability, or could have had "'substantial' input" into such decisions.  Id.

There is little dispute that petitioner was a responsible person.  Petitioner was the chief administrator of Riverside during the periods at issue.  She managed the hospital's operations, participated in board meetings, and had check-signing

[*11] authority over Riverside's bank accounts during the periods at issue.  She reviewed hospital expenses and prioritized payments to hospital staff, vendors, and private creditors that she deemed provided essential services to Riverside and its patients.

Petitioner argues that Mr. Hilliard exercised greater financial control over hospital funds during the periods at issue, but that does not negate petitioner's status as a responsible person.  While the rule 11 agreements provided Mr. Hilliard with control over Riverside's finances, petitioner provided scant evidence that he exercised such control.  Even if he had, section 6672 applies to "any" responsible person, not the person most responsible for the payment of the taxes.  Accord Barnett, 988 F.2d at 1455 (noting that businesses may have several responsible persons under section 6672).  Moreover, the individual need not have the final word as to which creditors should be paid in order to be liable for TFRPs.  Brown v. United States, 464 F.2d 590, 591 n.1 (5th Cir. 1972).  Rather, it is sufficient that the person have "effective power" or "significant input" in the decision as to whether funds are to be used to pay Federal taxes owed.  See Barnett, 988 F.2d at 1454-1455; Brown, 464 F.2d at 591.  The evidence shows that petitioner exercised this requisite control during the periods at issue by signing checks, moving funds between Riverside's accounts, and determining which vendors and creditors should

[*12] be paid or not paid when Riverside's financial resources were scarce and amounts were owed to the Federal Government. Accordingly, we find that petitioner was a responsible person for purposes of section 6672.

B.      Willfulness

A responsible person will be held liable for a TFRP only where the failure to pay the withholding tax was willful. Sec. 6672. "Willful" for this purpose does not mean the responsible person must have a "criminal or other bad motive * * *, but simply a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees." Newsome, 431 F.2d at 745. To establish willfulness, there is no requirement that the responsible person intended to deprive the Federal Government of the withholding tax. Id. at 747. Willfulness can exist where the "responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the [Federal] Government". Mazo, 591 F.2d at 1155. Willfulness is typically proven by evidence that a responsible person paid other creditors when withholding taxes were due to the Federal Government. Gustin v. United States, 876 F.2d 485, 492 (5th Cir. 1989).

Petitioner does not dispute that she knew that Riverside was not fully paying its trust fund taxes and even acknowledged prioritizing the signing of checks to

[*13] vendors and creditors over the Federal Government.  Generally, such actions demonstrate willfulness for purposes of section 6672.  See Davis v. United States, 402 F. App'x 915, 919-920 (5th Cir. 2010); Howard v. United States, 711 F.2d 729, 735 (5th Cir. 1983).  However, petitioner contends that she was not willful because the hospital's available funds were encumbered by certain legal obligations that excused her failure to pay the hospital's Federal withholding tax obligations.  We disagree, as explained below.

    1.    Dixon Lawsuit

Petitioner argues that Dixon was a "priority lien holder" whose interests were superior to that of the Federal Government such that Dixon was able to encumber the hospital's scarce financial resources during the periods at issue through the Dixon lawsuit and rule 11 agreements filed in conjunction with that lawsuit.  Petitioner further alleges that any directive by Mr. Hilliard to petitioner to not disburse hospital funds for the payment of Federal withholding taxes was performed in his capacity as an agent of Dixon.

    Funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds.  See Barnett, 988 F.2d at 1458 (citing Honey v. United States, 963 F.2d

**[*14]** 1083, 1090 (8th Cir. 1992)).[11] Petitioner has not shown that Dixon's interests were legally superior to that of the Federal Government such that Riverside's funds could be considered encumbered. Petitioner presented a security agreement executed in 2009 between Dixon and Riverside (and its affiliates), but petitioner did not establish how this document legally entitled Dixon to priority over the Federal Government, with the security agreement itself containing multiple express caveats for the payment of all taxes. Petitioner also alleged that a writ of garnishment was issued on December 3, 2013, on Riverside's bank accounts, but petitioner did not substantiate that claim. Petitioner likewise alleged in her posttrial brief that Dixon filed a temporary restraining order on January 30, 2014, to enjoin Riverside from accessing its bank accounts, but petitioner again did not substantiate that claim.[12]

---

[11] In the context of a debtor-creditor relationship, this means that a debtor's voluntary decision to grant a security interest or other control over its assets to a creditor does not create an encumbrance on those assets that would excuse the payment of Federal tax obligations unless that creditor holds an interest in those assets that is superior to that of the IRS. See Barnett v. IRS, 988 F.2d 1449, 1458 (5th Cir. 1993); Davis v. United States, 121 A.F.T.R.2d 2018-935, 2018 WL 1173149 (D. Colo. 2018).

[12] Petitioner did produce a temporary restraining order dated November 1, 2013, along with a November 15, 2013, extension, issued by a Texas State court with respect to the freezing of Riverside's bank accounts from November 1 to December 6, 2013, but this period does not fall within the periods at issue.

**[\*15]** As to petitioner's related argument concerning the rule 11 agreements, these agreements are akin to contracts between private parties, <u>Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health and Human Servs.</u>, 540 S.W.3d 553, 560 (Tex. 2018), and only become legally enforceable upon the specific request by one of the parties to a Texas court, <u>Exito Elecs. Co. v. Trejo</u>, 142 S.W.3d 302, 306 (Tex. 2004); <u>Redwood Grp., LLC v. Louiseau</u>, 113 S.W.3d 866, 872 (Tex. App. 2003). Although the parties acknowledged that they intended for the rule 11 agreements to "carry the full authority as [Texas State] [c]ourt [o]rders", there is no evidence that an actual request for enforcement of these agreements occurred in this case other than their filing with a Texas State court. <u>See</u> <u>Trejo</u>, 142 S.W.3d at 306 (noting that filing of rule 11 agreement is prerequisite for enforcement but "is not in and of itself a request for enforcement or any other affirmative action" by a Texas court). Nevertheless, we need not rely exclusively on interpretations of rule 11 agreements under Texas law to reach our holding as the record also shows that both Riverside and petitioner breached the terms of the rule 11 agreements during the periods at issue, suggesting that the agreements may not have been considered fully binding. Most notably, at least one rule 11 agreement stipulated for the payment of trust fund taxes, yet the record does not show that either Riverside or petitioner abided by those terms.

**[\*16]** Therefore neither the Dixon lawsuit nor the rule 11 agreements can negate the willfulness element as it pertains to petitioner. Likewise, petitioner's claim that she relied on Mr. Hilliard's direction to pay other creditors over the Federal Government as part of this lawsuit is not a defense to liability under section 6672. See Davis, 402 F. App'x at 919-920; Howard, 711 F.2d at 735-736.

2.     Texas State Code

Petitioner, directing us to certain sections of the Texas State Code concerning hospital standards, also claims that these sections would subject her, on a personal level, to civil sanctions and criminal penalties if she failed to pay for "essential services" as provided by hospital staff, vendors, and creditors.[13] Contrary to petitioner's claim, none of the cited provisions speaks to a potential imposition of such consequences on an individual level.[14] Moreover, even if we

---

[13] Petitioner specifically cited secs. 241.026(a) and 241.054 of the Texas Health and Safety Code, which mention a broad set of general patient care standards to be adopted by the Texas Board of Health, along with the State's procedural process for handling a violation of such standards by a hospital. Petitioner also cited secs. 448.201, 448.203, 448.216, and 448.218(a) of title 25 of the Texas Administrative Code, which similarly speak in broad terms to the general care and code of ethics expected by a health care provider.

[14] Petitioner also cited in support United States v. Park, 421 U.S. 658, 672-673 (1975), and described its holding as "the [U.S. Supreme] Court ruled [in Park] that hospital administrators are not immune from civil penalty & criminal prosecution for injury to patients for a hospitals [sic] failure to provide sufficient

[*17] were to read these State code provisions to conflict with section 6672, the Federal statute necessarily preempts the State code in this instance. See Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963) (holding that preemption exists "where compliance with both federal and state regulations is a physical impossibility"). Petitioner's good-faith belief in this regard is again not a defense to liability under section 6672. See Davis, 402 F. App'x at 919. In sum, the Texas State Code does not render petitioner's actions any less willful.

### C. Reasonable Cause

The Court of Appeals for the Fifth Circuit recognizes that a taxpayer may avoid liability for a TFRP by showing reasonable cause for a failure to collect, account for, and pay over trust fund taxes. Newsome, 431 F.2d at 746-747. It is a very limited exception to a finding of willfulness for which "no taxpayer has * * * carried that pail up the hill." Logal v. United States, 195 F.3d 229, 233 (5th Cir. 1999) (quoting Bowen v. United States, 836 F.2d 965, 968 (5th Cir. 1988)). Further, reasonable cause is not a defense where a responsible person "knew that

---

staffing, funding for staffing and to follow standards of cleanliness." Petitioner's characterization of this case is misleading as it involved the liability of a president of a national food store chain for "adulterated food" violations under the Federal Food, Drug, and Cosmetic Act and did not address issues of patient care by a hospital administrator.

[*18] the withholding taxes were due, but * * * made a conscious decision to use corporate funds to pay creditors other than the government." Id.

While petitioner does not assert that the reasonable cause exception applies to her, we consider its applicability. Petitioner concedes that she knew withholding taxes for Riverside were due. Additionally, the record contains considerable evidence that she paid other creditors after becoming aware of Riverside's unpaid liability for Federal employment taxes. Thus, we find that a defense of reasonable cause is unavailable to petitioner.

III.    Conclusion

The Court appreciates the difficult situation in which petitioner found herself during the periods at issue. Petitioner believed she had a responsibility to ensure that her patients were cared for and that she needed to prioritize whatever funds Riverside had to fulfill this mission. While we may sympathize with petitioner's dilemma, we are a court of law, not equity. Stovall v. Commissioner, 101 T.C. 140, 149-150 (1993). Petitioner was required to collect and remit withheld funds, and she did not. Her stated justification, no matter how noble, does not make her failure to pay any less willful.

[*19] To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.